JAMES F. GETTY V. FRANK M. HOLCOMB *et al.*

No. 16,271. (99 Pac. 218.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Title of an Act—Elections.* The provision of the Australian ballot law (Laws 1893, ch. 78, § 25; Laws 1905, ch. 222, § 3) to the effect that in cases of contested elections packages of ballots which have been sealed up and deposited with the county clerk shall be opened only in open session of the contest tribunal is not unconstitutional because not within the scope of the title to the act.

2. ELECTIONS—*Contest—Opening Sealed Ballots.* The provision referred to forbids the opening of such ballots in a proceeding for the taking of depositions before the probate judge preliminary to the trial of a contested election to the office of senator.

Original proceeding in mandamus. Opinion filed December 12, 1908. Writ denied.

*John S. Dawson, Hale & Dean, C. F. Hutchings,* and *L. W. Keplinger,* for plaintiff.

The opinion of the court was delivered by

BURCH, J.: At the election held in November, 1908, James F. Getty, the plaintiff, and T. A. Milton were rival candidates for election to the office of senator

Getty v. Holcomb.

from the fourth senatorial district, comprising Wyandotte county. The canvassing board declared that Milton had received the greater number of votes and was elected. The plaintiff in due time instituted a contest, which, under the law, must be tried by the senate in January, 1909. Being desirous of collecting evidence to sustain his causes of contest before the senate when it convenes, the plaintiff served upon his opponent a notice to take depositions before Van B. Prather, the probate judge of Wyandotte county. He then caused a subpœna to issue for Frank M. Holcomb, county clerk of that county, commanding him to bring with him certain ballots in his custody which had been returned to him from various voting precincts, in order that such ballots might be opened and inspected, their legality investigated, that they might be counted, and for other purposes pertinent to the contest. The county clerk refused to produce the ballots, and the probate judge refused to coerce him. Thereupon the plaintiff commenced this action of mandamus to compel the officials named to perform the functions desired of them.

In 1893 the legislature enacted what is known as the Australian ballot law, under the following title:

"An act to provide for the printing and distribution of ballots at the public expense, and for the nomination of candidates for public offices; to regulate the manner of holding elections; and to enforce secrecy of the ballot, and to provide for the punishment of the violation of this act." (Laws 1893, ch. 78.)

Section 25 of this law requires that the ballots cast at an election shall be preserved in sealed packages, which must be kept in official custody for a given period of time after the election, and then continues as follows:

"Provided, . . . in all cases of contested elections the parties contesting the same shall have the right to have such ballots opened, and to have all the

15—79 KAN.

errors of the judges in counting or refusing to count any ballots corrected by the court or body trying such contest; but such ballots shall be opened only in open court, or in an open session of such body, and in the presence of the officer having the custody thereof." (Laws 1893, ch. 78.)

This provision has been carried forward in the process of amending the election laws (Laws 1897, ch. 129, § 25; Laws 1901, ch. 177, § 11; Laws 1903, ch. 228, §4), now appears as a part of section 3 of chapter 222 of the Laws of 1905, and seems to bar the way to the relief which the plaintiff seeks. If the seals upon the packages of ballots in question can be broken only in open court or open session of the contest tribunal the county clerk ought not to permit it to be done elsewhere, and the probate judge has no power to compel it to be done elsewhere.

It is argued, however, that the title of the original act of 1893 is not broad enough to indicate the inclusion in the body of the act of the provision quoted; that the titles of the various amendatory acts referred to are so framed that the validity of the matter assailed depends upon the scope of the title of the act of 1893; and hence that the provision is void under section 16 of article 2 of the constitution, which requires that no bill shall contain more than one subject, which shall be clearly expressed in the title.

It is well understood that the constitutional mandate thus invoked will not be interpreted in any narrow, technical or illiberal spirit. It relates to substance and not to form. The purpose of a title is to direct the mind to the contents of a bill or of an act, so that members of the legislature and the people may be fairly informed and not deceived or misled as to what it embraces. Although the subject of an act must be single, it may be very comprehensive, and may therefore extend to and include any number of pertinent legislative details; and any phraseology by way of title

Getty v. Holcomb.

which clearly indicates the subject to which all such details may properly relate will be sufficient.

In framing the title to the act of 1893 the legislature ought to have expressed the subject of the law in one general statement, instead of giving a partial synopsis of its contents. Very clearly, however, the title is not in fact plural. The topics enumerated are not distinct and independent, much less incongruous, subjects of legislation. A ballot law is disclosed covering the cognate matters expressly alluded to and all others intimately connected with or by nature germane to them. Doubtless the recital in the title of certain specific subheads of the general subject of the act limits the scope of the act to those matters and such others as may be fairly betokened by them. But it is stated that the "manner of holding elections" is regulated. The word "manner" has here the ordinary meaning of mode, method, the way of effecting a result; and the word "holding" has the same signification it bears when we speak of holding court or holding a meeting. Therefore the broad subject of the mode of accomplishing the election of public officers is presented.

Without doubt a law requiring voters at elections to use none but official ballots is a true regulation of the manner of holding elections. The manner of holding elections is regulated solely to the end that correct results may be ascertained and declared. Therefore regulations requiring ballots to be sealed up and preserved, so that their identity may not be clouded or their value as evidence impaired until the true result of the election is correctly ascertained, directly and obviously affect the manner of holding the election. Now, limitations upon the right to open ballots which have been sealed and impounded in the regular course of steps taken in the process of holding an election are part and parcel of the same subject-matter. The two kinds of provisions sustain the relation to each other of declaration and qualification, and not only naturally

attend each other but necessarily do so, and ought not to be made the burden of separate laws. This being true, the conclusion must follow that the statute quoted is not unconstitutional for the reason assigned.

The statute relating to the trial of contested elections for the office of senator or member of the house of representatives is found in chapter 36 of the General Statutes of 1868. It contains the following provisions:

"SEC. 77. On the trial of any contested election for any of the officers in the first section of this act named, the parties to such contest may introduce either written or oral testimony; but no depositions shall be read on such trial unless the opposite party shall have had reasonable notice of the time and place of taking the same.

"SEC. 80. The contestor shall, within thirty days after the declaration of the canvassers, serve on the contestee a statement as hereinafter required in relation to county officers, except the list of illegal votes, which shall be served with the notice of taking depositions relative to them; and, if no depositions are taken, then twenty days before the hearing.

"SEC. 81. The probate judge may issue subpœnas in the above cases, and shall have power to compel the attendance of witnesses; and depositions may be taken under the rules for taking depositions in the ·district courts.

"SEC. 82. A copy of the statement and of the notices for taking depositions, with the service indorsed and verified by affidavit, if not served by an officer, shall be returned to the officer taking the deposition, and then with the depositions shall be sealed up and transmitted by mail, or by the hands of a sworn officer, to the secretary of state, with an indorsement thereon showing the nature of the papers, the names of the contesting parties, and the branch of the legislature before which the contest is to be tried.

"SEC. 83. The secretary of state shall deliver the same, unopened, to the presiding officer of the house in which the contest is to be tried, on or before the second day of the session of the legislature next after taking the depositions; and the presiding officer shall immediately give notice that such papers are in his possession.

"SEC. 84. Nothing herein contained shall be construed to abridge the right of either branch of the legislature to grant commissions to take depositions, or to send for and examine any witness it may desire to hear on such trial." (Gen. Stat. 1901, §§ 2647, 2650-2654.)

The plaintiff argues with great force that the purpose of this law is to enable contestants to prepare their evidence before the formal hearing—a very laudable purpose, which should be aided by all reasonable methods of interpretation; that the purpose was to constitute the officer taking depositions the body trying the contest *pro tanto;* that the grant of power to the judge of a court of record to issue subpœnas and to compel the attendance of witnesses shows that the proceeding is something other than the ordinary one to take depositions; that the power to compel the attendance of witnesses is unlimited; that the requirement that a list of illegal votes cast must be served with the notice to take depositions shows that evidence may be taken relating to that subject; that the ballots themselves must in most cases be the best evidence upon that subject; and, hence, that the production of ballots may be enforced in a deposition proceeding of the character of the one now pending.

If the purpose of the legislature be as the plaintiff contends, it ought not to have been left to mere inference and implication, but should have been clearly expressed. In the contest act the probate judge is given no power to enforce the production of ballots in official custody. Although the senate may establish its own rules of evidence, it does not seem probable that it should desire to determine the right to participate in its membership upon other than what wisdom and experience shows to be the best evidence. No description of the form or contents of ballots and of the packages containing them could possibly supply all the evidence which the ballots and packages themselves would furnish. There is no provision in the act for taking

and authenticating copies, and copies could never equal the originals. There is no obstacle or difficulty in the way of the production of the ballots themselves before the senate by the official custodian of them. If the presence of the ballots in the senate should finally be necessary or should finally be desirable, the precaution taken to preserve their identity and their efficacy and virtue as legal evidence might be substantially impaired by the treatment to which they would necessarily be subjected in the deposition proceeding. It requires the interposition of a very startling fiction to make a notary public or a probate judge, while taking depositions, a constitutent part of a constitutional body like the senate, and nothing but the most urgent necessity could justify the indulgence of such a fiction. If, however, it be employed, the language of the Australian ballot law must still be encountered. That law is the last expression of the legislature's will, and it is so clear that it must negative the inference the plaintiff would have drawn from the earlier statute. The session of the contest tribunal which is contemplated is a constitutional session. The time when that tribunal shall convene for the trial of contests is fixed by law, and the time for the trial of this one has not yet arrived. There can be no session of the senate within the meaning of the statute until that time does arrive, much less an open session of the body itself in truth and in fact, as the positive language of the statute requires.

A precedent from the action of the national house of representatives has been cited, but is not controlling. It is conceded by the house committee on elections that it is impossible for ballots cast in a congressional district of a state to be opened in an open session of the house at Washington, and in the presence of the state officer having their custody. To meet this difficulty the federal statute governing the collection of evidence in contest cases grants express power to the offi-

cer taking depositions to require the production of papers, and the refusal of any person to produce and deliver up papers in his possession pertaining to the election or to produce and deliver up sworn copies of such papers, if they be official, subjects him to penalties. In this case the law and the state of affairs to which it applies are entirely different.

The court is of the opinion that the petition fails to state a cause of action, and the writ of mandamus prayed for is denied.