MIAMI WATER COMPANY, a corporation organized and existing under the laws of the State of Florida, *Appellant*, vs. THE CITY OF MIAMI, a Municipal Corporation, organized and existing under and by virtue of the laws of the State of Florida, *Appellee*.

Division A.

Opinion filed May 7, 1931.

*Shutts & Bowen, Crate D. Bowen* and *L. S. Julian* for Appellant;

*J. W. Watson, Jr.* and *Mitchell D. Price,* for Appellee.

BUFORD, C.J.—The City of Miami, a municipal corporation, filed a bill of complaint against Miami Water Company to enjoin the water company from cutting off its connections with certain stand-pipe sprinkler systems and like instrumentalities which had been installed in privately-owned buildings and structures within the City of Miami and had been connected up with the water mains of the defendant company for the purpose of having furnished thereto and therein a water supply at all times sufficient to fight fires in and about such buildings and structures and for which service of allowing such connections and keeping charged with water and keeping water and pressure available for use in the fighting and extinguishing of fires by means of the instrumentalities above mentioned the water company charged certain fees per annum based upon the size of the pipe by which such instrumentalities were connected with the water mains of the water company. The stand-pipes, sprinkling systems and other like instrumentalities were required by the city building code to be installed by the owner in certain classes of buildings in certain manners described in the building ordinance and to be connected with the main lines of the water company at the cost and expense of the owner.

The record shows that on October 16, 1900, the City

Council of the City of Miami passed an ordinance grant-
ing to the Florida East Coast Hotel Company, its succes-
sors and assigns, for certain considerations, the exclusive
franchise, right and privilege for the period allowed by
law to acquire, own, construct, maintain and operate water,
electric and sewerage plants, or either of them, etc. Section
3 of that ordinance is the only part of the ordinance which
is necessary to be considered here. That section reads as
follows:

"SECTION III. The said City, through the chief of its
fire department, or other properly authorized officer, may
use water from the fire hydrants for the purpose of ex-
tinguishing fires whenever the same may occur, and for
the washing or flushing of drains, gutters, or sewers, in
its streets, avenues, alleys and other public places and
for the sprinkling of the public streets, whenever the
City Council and Mayor or Board of Health shall deem
it necessary; and, the water so used by the city shall
be without additional compensation to said grantee ex-
cept that said city as a part consideration for the privi-
leges and benefits aforesaid, and the covenants and
agreements contained in this ordinance on the part of
the said grantee to be kept and performed, hereby
covenants and agrees that the franchise granted by
this ordinance to said grantee, and the plant and all
property which is now or may hereafter be acquired,
owned, constructed, maintained and operated under
said franchise by said grantee, shall during the said
term of this franchise, be exempt from the payment of
any and all municipal taxes and assessments which
are or may be assessed or levied by said city; and when,
at any time, said franchise or other property of said
grantee shall not be so exempted by said city as afore-
said, then said city hereby covenants and agrees to pay
to said grantee, as rental, a sum at any such time

equal to the amount said grantee may so pay or be required to pay to said city, which such sum or sums as rental as aforesaid, shall be paid to said grantee, as they accrue and become due, out of the general revenues of said city; it being the intent of this provision that the performance of the covenants and agreements contained in this ordinance on the part of said grantee to be kept and performed and the granting to said city of the privileges and benefits aforesaid, shall be in effect a payment of any and all such taxes and assessments which are or may be assessed or levied by said city during the term of this franchise; that in all other cases, not in this ordinance particularly specified, where said grantee shall supply the city with, or the city shall use water, electricity and sewerage connections, or either of them the same shall be paid for by said city out of its general revenues at such rates as may be mutually agreed upon, not exceeding, however, the reasonable rates hereinbefore specified to be made and charged and collected for water, electricity and sewerage connections supplied to or used by other consumers as aforesaid.''

Miami Water Company became the successor and assignee of Florida East Coast Hotel Company and on the 29th day of June, 1926, the City of Miami, through its Manager duly authorized thereunto entered into a supplemental contract with Miami Water Company. Section 8 of that Contract is the only part of the contract which is needful to be considered here, and reads as follows:

''The Company agrees to permit the City to install and maintain necessary and adequate equipment on the Company's mains to enable the City to use from the water distributed by the Company water for flushing streets and sewers and for fighting fires, and the Company further agrees to permit the City to use from the

water distributed by Company water for such purposes, under the arrangement set forth in section 3 of that certain franchise granted to Florida East Coast Hotel Company and approved October 5, 1900, so long as said agreement shall be adhered to by said city. Said City may however, at its option, upon one year's written notice, to the Company, terminate such arrangement, and will thereafter pay for all water so used at Company's regular applicable rates therefor.''

General and special demurrers were filed to the bill of Complaint and a hearing had on affidavits presented to the chancellor. On such hearing certain findings of the chancellor were entered, injunctive relief was granted and the demurrers were respectively overruled.

From these orders appeal was taken.

The one question requiring determination here is whether or not the water company was within its rights in cutting off the water supply from the pipes connecting the water company's main line with the stand-pipes, sprinkler systems and like instrumentalities installed in privately-owned property for the purpose of fighting and extinguishing fires when the owners of such property failed and refused to pay reasonable fees charged by the water company for the maintenance of the water supply and what is known as stand-by service in keeping its equipment, water supply and water mains in such condition as to be able to furnish water through such connections for fighting and extinguishing fire at any time it might be required.

The court below held that the water company was not within its rights in requiring the payment of such fees and charges and should be enjoined from cutting off the water supply because of the failure of the property owners to pay the same.

It appears to us that it was not contemplated by the

terms of the franchise to the Florida East Coast Hotel Company that that corporation, its successors or assigns, should be required to furnish this so-called stand-by stand-pipe and sprinkler service to individual owners without compensation.

The City claims no right, title or interest in or to any of the stand-pipes or sprinkler systems installed on private property although the building code does provide that they may be used when necessary by the City Fire Department for fighting and extinguishing fires. These instrumentalities, although indirectly benefiting and protecting the public, are primarily for the benefit and protection of the owner of the property in and on which they are installed. They result in the elimination of a large proportion of the fire hazard and a material reduction in the cost of insurance to the owner on the buildings and structures in which they are installed.

Neither do we find in the supplemental agreement of June 29th, 1926, language which requires the water company to furnish this service to individual owners without compensation.

Having inspected the ordinance and the agreement affecting the respective rights of the parties and finding that there is no contractual obligation upon the part of the water company to furnish this service without charge, we must then determine whether or not the water company is under the law required to furnish such service free of charge because of its duty under its contract to furnish water to the city under the provisions of section 3 of the ordinance granting the original franchise. It appears to be well settled in a great majority of jurisdictions where this question has been presented that a water company which supplies the pressure and water for standpipes

or automatic sprinkler systems for individuals or private corporations performs a service which is not included under its contract with municipal authorities to supply water for fire protection and a water company supplying such stand-by service has the right to make a reasonable charge against the private owner therefor.

In the case of Cox vs. Abbeville Furniture Factory, 75 S. C. 48, 54 S. E. 830, the Supreme Court of South Carolina, speaking through Mr. Justice Woods, and having under consideration a question like the one presented here said:

"The system of hyrants and sprinklers installed by the furniture factory which its officers regarded necessary to the economical management of their particular business manifestly differed in kind and degree from the fire protection offered by the ordinary hydrants installed by the City authorities as a part of a municipal system of fire protection. It seems quite clear, therefore, that the agreement made by the Abbeville Light & Power Company with the Board of Commissioners of Public works 'to pump and supply the water to the City of Abbeville for the purposes of extinguishing fire free of charge' did not impose the obligation to furnish free of charge water for a special private system of fire protection installed by this private corporation on its own premises for the special security of its own property over and above the protection undertaken by the municipality for the benefit of the municipal public. The extension by the City of the water mains across the railroad to the vicinity of the furniture factory implied such consent to any legitimate use of the water as to relieve the furniture factory from the charge of committing a tort in making the connection and using the water; but, on the other hand, in making the connection and availing itself of the special fire protection it needed

for its private business, the furniture factory, in the view of the law, must have imputed to it a promise to pay the reasonable value of the protection it thereby obtained. The benefit received was not incidental, but it was the result of a direct appropriation by the furniture factory of power and water, which was the property of another, as a standing guard over its property against the peril or destruction by fire. Connection with a light or water plant accompanied by the asserted right of using it and the means of exercising the right is a benefit enjoyed at the hands of another imposing an obligation to make reasonable compensation, although the occasion for actual use never arises. Here there was not only the connection, the asserted right to use it and the means of exercising the right affording continual protection against fire, but there was a positive saving of insurance bestowed upon the furniture factory by the water company. The fact that there was no use, no actual consumption of water, is a factor to be considered in estimating what should be the amount of the compensation, but it does not relieve the furniture factory from liability for the fire protection furnished at the expense and labor of the Water, Light and Power Company. If one has his goods transported from one place to another by a common carrier without any contract with the carrier, or even the knowledge of its agent, his liability for reasonable compensation for the service would not be doubted, though it could not be shown that the transportation required any additional effort or expense on the part of the carrier or caused it to lose the carriage of other goods.''

This statement of law applicable to such cases is supported by Niehaus Bros. vs. Contra Costa Water Co., 159 Cal. 305, 113 Pac. 375; Shaw Stocking Co. vs. City of Lowell, 199 Mass. 118, 85 N. E. 90; Loveman vs. City Water Co., 1 Tenn. Chancery Appeals 596; Gordon vs. Doran, 100

Minn. 343, 111 N. W. 272, and a great number of other Supreme Court decisions throughout the United States, as well as by the rulings of practically all public utility commissions.

There is no question raised in this case as to the reasonableness of the charge demanded for the service rendered. It is too well settled to be now seriously questioned, that a water company has the legal right to cut off its connection with supply pipes leading to privately owned property upon the failure of the person, firm or corporation, against whom reasonable charges for services are made, to pay such reasonable charges. See Carmichael vs. City of Greenville, 112 Miss. 426, 73 Sou. 278; Heronymus vs. Bienville Water Supply Co., 131 Ala. 447, 31 Sou. 31; Royal vs. Cordele, 132 Ga. 125, 63 S. E. 826; Burke vs. City of Water Valley, 87 Miss. 732, 40 Sou. 820, and other cases cited in the opinions in those cases.

For the reasons stated, the orders appealed from should be reversed and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

Reversed and remanded.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND DAVIS, J., concur in the opinion and judgment.

WHITFIELD, J., concurring:

The rates for water furnished by the water company to the public generally for domestic purposes, are not shown but it may be assumed that the service here involved is special and particular in its nature with no lawfully prescribed or contract rates provided therefor. Apparently the pressure necessary for the stand-by pipe service to be available and useful in extinguishing fire in a building, is afforded when the pressure required for extinguishing fires

through stout hydrants is provided under the contract with the city; and as the customer furnishes the standpipe connection with the company's standpipes, the charge for the stand-by service if more than nominal should be reasonable.