No. 38,447

Guy A. Thompson, Trustee, Missouri Pacific Railroad Company, Debtor, *Appellant*, v. The Board of County Commissioners of the County of Osage, State of Kansas, et al., *Appellees*.

(238 P. 2d 462)

Opinion filed December 8, 1951.

*Ralph M. Hope*, of Wichita, argued the cause, and *W. F. Lilleston*, of Wichita, and *Alex Hotchkiss*, of Lyndon, were with him on the briefs for the appellant..

*T. M. Lillard*, of Topeka, argued the cause, and *Leonard W. McAnarney*, county attorney, and *O. B. Eidson, Philip H. Lewis*, and *James W. Porter*, all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Price, J.: This was an action to recover taxes paid under protest. From an adverse judgment plaintiff has appealed.

In 1949, pursuant to the passage of chapter 385, Laws of 1949 (now appearing as G. S. 1949, 72-5715), Osage county levied ad valorem taxes for that year upon the property owned by appellant situated and located within the county. Appellant paid the taxes so levied under protest and then commenced this action, claiming that the act in question is unconstitutional and void in that it contravenes section 17 of article 2 of the state constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

The material provisions of chapter 385, Laws of 1949, under attack, are:

"Annually, commencing in the year 1949, the board of county commissioners of every county in this state having a population of more than 13,000 and less than 15,000 and an assessed valuation of more than $25,000,000 and less than $30,000,000 and the board of county commissioners of every county in this state having a population of not less than 8,000 nor more than 11,000 and having an assessed tangible valuation of not less than $32,000,000 nor more than $45,000,000 and not having a rural high-school district located wholly within its boundaries shall make a tax levy of three mills on all the taxable tangible property of the county which is not located in a school district maintaining a high school. All moneys derived from such a tax levy shall be placed by the county treasurer in a separate fund which shall be known as the 'special high-school equalization fund.' On March 1, June 1, September 1, and November 1 of each year, commencing March 1, 1950, the county treasurer shall apportion and pay to the several school districts maintaining high schools located in his county all of the money on hand in said special high-school equalization fund on said dates in the proportion that the enrollment of each such high school as of October 1 of the preceding year bear to the total enrollment of all high schools located in his county as of October 1 of the preceding year. . . ."

In the court below it was stipulated that as of March 1, 1949, the population of Osage county was 13,176, and that its assessed valuation for the year 1949 was $27,209,265, and that at the time of the enactment of the act in question Osage county was the only county in the state which had both a population of more than 13,000 and less than 15,000 and an assessed valuation of more than $25,000,000 and less than $30,000,000.

It was further stipulated that at the time of the passage of the act Stafford county was the only county in the state which had a population of not less than 8,000 nor more than 11,000 which also had an assessed valuation of not less than $32,000,000 and not more than $45,000,000, and which also did not have a rural high school district located wholly within its boundaries.

At the time the lower court rendered judgment upholding the act so far as Osage county is concerned it expressed the opinion that the question was not free from doubt, but that in view of the more liberal interpretation to be given limiting clauses in laws pertaining to schools and education the unconstitutionality of the act did not so clearly appear as to warrant a judgment for appellant. The court was also of the opinion that if the limitation as to Stafford county was not valid nevertheless the two classes were severable and that such alleged defect in the second classification would have no consequence so far as Osage county is concerned.

Appellant contends there can be no question but that the act is in effect a special law where a general law could have been made

applicable, and, further, that if only one of the two classifications set forth therein is bad then the remainder of the act is also void.

On the other hand, in support of the judgment below, appellees argue that classification is a legislative and not a judicial function; that county population and assessed valuations have been held to be not arbitrary and unreasonable but germane factors appropriately used by the legislature in statutes designating particular classes of counties to which a law shall apply; that where, as here, the act contains no limitation as to time it will not be held to be a special law because at the time of its enactment only one county had the specified population and assessed valuation; and, finally, that in a long line of decisions this court has been more liberal in construing school laws when attacked on the same ground as here than any other field of legislation, citing *Board of Education of School Dist. No. 1 v. Robb,* 168 Kan. 368, 212 P. 2d 306, and other decisions to the same effect.

Cases involving this or very similar questions have been before this court on numerous occasions. No attempt to review or distinguish them will be made. Our decisions on the question reflect many inconsistencies, brought about, no doubt, by the exigencies and facts of the particular cases under consideration. The rules of construction have been repeated many times. The difficulty arises with their application. Generally speaking, it may be stated that although the legislature may limit a general law to some particular class of persons or things, the classification created must be a natural one and must rest upon a genuine and substantial basis. The classification cannot be an arbitrary or fictitious one but must be based upon real and substantial distinctions which have a reasonable and substantial relation to the subject matter involved. (See *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.,* 171 Kan. 581, 236 P. 2d 782, in which many of our decisions are reviewed.)

Our decision in the case before us is confined to the application of the act only to Osage county. Its title reads:

"An act relating to schools in certain counties, providing for the levy of an annual tax on property which is not located in a school district maintaining a high school, creating a special high-school equalization fund and providing for its apportionment and distribution to school districts maintaining high schools."

None has been cited and we know of no reason why the tax problems of Osage county, as they pertain to schools, are any dif-

ferent from those of other counties, the population and assessed valuation of which fall slightly under the minimum or slightly over the maximum figures set out in the first classification contained in the act, and neither does it appear that a general law could not have been made applicable. It is to be noted that the constitutional provision involved does not prohibit special legislation, as such— it only prohibits it in all cases where a general law can be made applicable.

As bearing on the question involved we note that subsequent to the decision of the lower court the 1951 session of the legislature repealed the act in question and enacted chapter 411, Laws of 1951, by the provisions of which substantially the same benefits contained in the former act are granted to *all* counties in the state. In deciding this case the lower court of course did not have the benefit of this subsequent legislation before it, but in our opinion the passage of such subsequent act lends weight to the contention that when the 1949 act was passed a general law could have been made applicable.

In fairness to the trial court and counsel for the appellees we frankly concede that in many of our former decisions there is justification for the judgment from which this appeal was taken. On the other hand, we also frankly concede that the "liberal construction" of the constitutional provision heretofore accorded in many instances to school legislation has been unduly expanded, and we do not feel that the present one admits of any relaxation of the mandate contained in the provision under consideration.

In our opinion chapter 385, Laws of 1949, is a special law where a general one could have been made applicable, and is therefore unconstitutional and void. The judgment of the lower court is therefore reversed.