No. 38,946

THE STATE OF KANSAS, on the relation of Terry E. Relihan, County Attorney of Smith County, Kansas, *Plaintiff*, v. THE BOARD OF EDUCATION OF COMMON SCHOOL DISTRICT NUMBER FOUR OF SMITH COUNTY, KANSAS; W. E. LEE, Director of said Board; MELVINA LEONARD, Treasurer of said Board; MELVIN COLLIER, Clerk of said Board; and COMMON SCHOOL DISTRICT NUMBER FOUR OF SMITH COUNTY, KANSAS, *Defendants*.

(249 P. 2d 689)

Opinion filed November 8, 1952.

*Terry E. Relihan,* Smith county attorney, was on the briefs for the plaintiff. *Arno Windscheffel,* of Smith Center, was on the briefs for the defendants.

The opinion of the court was delivered by

THIELE, J.: This is an original action in quo warranto to determine the power and authority of the defendant board and its officers to issue bonds of the school district under the circumstances hereafter related.

Preliminary to a review of the pleadings we note that by the enactment of Laws 1951, chapter 395, section 44 (appearing as G. S. 1951 Supp. 72-2017) the state legislature provided, in substance, that for the purpose of constructing, furnishing and equipping a schoolhouse, the board of any common school district is authorized to issue bonds when the question has been submitted to and favorably voted on by the qualified electors of the district, but the aggregate amount of bonds, with an exclusion not of present importance, shall not exceed six percent of the assessed value of the tangible taxable property within the district. Provisions of a later section as to the procedure to be followed need no notice here. Amending legislation previously enacted, the legislature enacted Laws 1951, chapter 448 (appearing as G. S. 1951 Supp. 75- 2315, *et seq.*) which provides that upon compliance with its terms, a common school district may be authorized to issue bonds for the purpose of constructing a school building "to an amount of not more than one hundred

percent in excess of, and in addition to, the amount of bonds which such district may be authorized to issue." (75-2316.)

By the enactment of Laws 1951, chapter 421, section 1 (appearing as G. S. 1951 Supp. 72-2019) the legislature provided, in substance, that:

"The district board of any common-school district including a city with a population of more than two thousand (2,000), and located in a county having a population of not less than eight thousand (8,000) nor more than ten thousand (10,000) and an assessed valuation of tangible property of not more than twenty-six million dollars ($26,000,000), is hereby authorized and empowered to issue bonds of the school district for the purpose of raising funds to be used in the erection of a new school building, equipping the same and acquiring a site therefor. The total amount of bonds issued under the provisions of this act and the amount of other bonds of such school district outstanding at the time such bonds are issued, shall not exceed fifteen percent (15%) of the assessed valuation of tangible property within such district. No bonds shall be issued under the provisions of this act until such issuance has been authorized by the qualified electors of the school district in the manner provided by law. Bonds issued under the provisions of this act shall be issued, sold, delivered and retired as are other common-school district bonds."

Omitting formal allegations, the plaintiff's petition alleged that the defendant school district has within the district the city of Smith Center, which has a population of 2,165; that the population of Smith County is 8,859 and the assessed value of all tangible property in the county is $23,598,602; that the school board caused an election to be held on June 10, 1952, pursuant to the provisions of G. S. 1951 Supp. 72-2019, for the purpose of voting upon the issuance of the bonds of the district in the amount of $348,000 to equip and construct a school building within the district and that the declared result of the election was in favor of the issuance of the bonds. Plaintiff further alleged that G. S. 1951 Supp. 72-2019 violates article 2, section 17, of the constitution of the state of Kansas, for the reason it is a special law not general in its nature nor uniform in operation throughout the state, and for the further reason that the general laws of Kansas can be made applicable for the purpose which the school district is attempting, and therefore the above statute is a special law, repugnant to the constitutional provision. After alleging that the board will proceed to issue and sell the bonds unless ousted from proceeding, plaintiff prays this court to declare G. S. 1951 Supp. 72-2019, repugnant to the constitution and to oust the defendant board from proceeding to issue the bonds mentioned.

All of the defendants have joined in an answer admitting all of

the facts pleaded by plaintiff, denying that the statute violates the constitutional provision or that it is a special law, and alleging that the statute is a general law uniform in operation throughout the state; denying there is any other general law under which they can proceed or which can be made applicable to the needs and purposes of the district and praying that plaintiff's prayer for relief be denied and the statute declared not to violate the constitution.

In support of their contention that G. S. 1951 Supp. 72-2019 is not repugnant to the constitution, the defendants review many of our previous decisions, but rely principally upon *Board of Education of School Dist. No. 1 v. Robb*, 168 Kan. 368, 212 P. 2d 306, hereafter referred to as the Robb case. In *Redevelopment Authority of the City of Kansas City v. State Corporation Comm.*, 171 Kan. 581, 236 P. 2d 782, decided in October, 1951, we reviewed a considerable number of our decisions, including most of those relied on by the defendants, and that review need not be repeated. In that case the classification made by the legislature was based on population alone. It was held that ordinarily such a classification is sufficient to satisfy the constitutional requirement, but that the classification must be a natural one based upon distinctions which have a reasonable and substantial relation to the subject matter of the act. The statute there under consideration was held to be repugnant to the constitution.

In the Robb case, *supra*, decided in December, 1949, the statute involved restricted its application to boards of education in second class cities in counties of fixed population limits having an assessed tangible valuation over a fixed amount, a situation quite comparable to that involved in the statute now under consideration. In that case it was noted that it did not readily appear that the size of the county or the amount of its assessed valuation had anything to do with bond limitations of a school district in the county or was germane thereto, but because of the liberality accorded to school legislation we could not reach the conclusion it clearly appeared the statute was unconstitutional.

The plaintiff relies on the later case of *Missouri Pacific Rld. Co. v. Board of County Comm'rs*, 172 Kan. 80, 238 P. 2d 462, decided in December, 1951, where the statute involved pertained to a school tax levy and contained restrictions on its operation comparable to those in the statute presently involved. In the cited case attention was directed to the Robb case, *supra*, but this court declined to ex-

tend its force and effect. It was stated that the tax problems of the county there involved, as they pertain to schools, were no different than those of other counties, nor did it appear that a general law could not have been made applicable. The court said:

"In fairness to the trial court and counsel for the appellees we frankly concede that in many of our former decisions there is justification for the judgment from which this appeal was taken. On the other hand, we also frankly concede that the 'liberal construction' of the constitutional provision heretofore accorded in many instances to school legislation has been unduly expanded, and we do not feel that the present one admits of any relaxation of the mandate contained in the provision under consideration." (l. c. 83.)

and held the statute unconstitutional.

In *State, ex rel., v. Board of County Comm'rs,* 173 Kan. 367, 245 P. 2d 1181, decided in July, 1952, the statute involved provided for clerical assistance of supervisors in soil conservation districts in counties of certain population limits and having a stated assessed valuation. It was held that the classification did not rest upon real or substantial distinctions which had a reasonable and substantial relation to the subject matter; that the act was a special law where a general law could have been made applicable, and that it was in contravention of the constitution and void.

Many of the cases mentioned above, or referred to in those included in reviews made, call attention to the fact we take judicial notice of the population of cities and counties and of assessed valuations. We also take judicial notice of the classification of cities. (*City of Fort Scott v. Elliott,* 68 Kan. 805, 74 Pac. 609, and *Olsburg State Bank v. Anderson,* 154 Kan. 511, 119 P. 2d 515. That we have done. Without setting forth any table of statistics, it appears there are four counties within the statutory limits having cities of over 2,000 population, and in three of these counties the cities are cities of the second class, whose bond limitations are fixed by G. S. 1951 Supp. 72-1626. Smith Center is a city of the third class, and the school district in which it is located is the only district to which the act involved applies. Application of the act to other districts is so remote that no reasonable conclusion can be reached than that the act was not intended to apply to any other school district except the one at Smith Center.

If the "liberal construction" which may have been extended previously to school legislation was justified, and there are grave doubts as to that, such a construction may not be extended to the act now involved, for it is obvious the act is so limited that it must be de-

clared to be a special law where a general one could have been made applicable. That there are general laws under which the school district could have issued its bonds to equip and construct a school building in an amount not exceeding twelve percent of the amount of its assessed tangible property valuation is shown above. For the legislature to single out one district and permit it to issue bonds up to fifteen percent, as the act in question does, is so clearly a special law where a general law can be made applicable, that the matter is not debatable.

In our opinion Laws 1951, chapter 421, appearing as G. S. 1951 Supp. 72-2019, contravenes article 2, section 17, of our state constitution and is unconstitutional and void, and the defendants and each of them must be ousted from proceeding under that statute, and it is so ordered.