No. 39,368

The City of Lawrence, Kansas, a Municipal Corporation, *Plaintiff*,
v. George Robb, State Auditor of Kansas, *Defendant*.

(265 P. 2d 317)

Opinion filed January 4, 1954.

*Charles D. Stough*, city attorney, of Lawrence, Kansas, argued the cause and *Milton P. Allen*, of Lawrence, Kansas, and *Robert B. Fizzell* and *Robert B. Fizzell, Jr.*, both of Kansas City, Mo., were with him on the brief for the plaintiff.

*William P. Timmerman*, assistant attorney general, argued the cause, and *Harold R. Fatzer*, attorney general, was with him on the brief for the defendant.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus in which the City of Lawrence sues to compel the state auditor to register certain water and sewage system revenue bonds hereafter more particularly described.

In a preliminary way, it may be said that the legislature of 1953 passed and the governor approved House Bill 362 now appearing as Laws 1953, chapter 72, the act becoming effective on June 30, 1953. It is not necessary, in view of the contentions later discussed, that we make a complete review of the statute. The title of the act is:

"An act authorizing any city of the first or second class having a population of less than 80,000 to combine the management of its waterworks system and sewage disposal system; to issue revenue bonds for the improvement of such combined system, to fix and collect rates and charges for operation, repairs, maintenance, extensions, enlargements and improvements."

So far as need be noticed the sections of the act provide as follows: Section 1 defines words used in the act. Section 2, that the city may by ordinance declare its waterworks system and sewage disposal system to be a water and sewage system and thereafter "it shall be operated and financed as herein provided." Section 3, states that upon establishment of the system the operating funds budgeted for the two systems shall be transferred to a "water and sewage fund." Section 4, that the city shall by ordinance create a water and sewage department for the operation of the system. Section 5, that the city shall establish such rates and charges for water and for the use of the sewage disposal system as shall be reasonable and sufficient to pay the cost of operation, repairs, maintenance, extension and enlargement of the water and sewage system and improvements thereof and new construction and the payment of revenue bonds and interest thereon as may be issued for the system. Provision is also made that the city is authorized to discontinue water service for any failure to pay the rates or charges fixed for either water service or use of the sewage disposal system or both, when due. Provisions as to the use of revenue are not of present importance, nor are the provisions of section 6. Section 7 provides that under conditions stated the city may contract for or make repairs, alterations, extensions, enlargements or improvements of its water and sewage system, and issue revenue bonds in payment of the cost thereof, without submitting the proposal to the electors,

but provided that if the estimated cost of extension, enlargement or improvement exceeds $200,000 an election shall be called and held to vote on the proposition of issuing bonds for the purpose intended. Sections 8, 9 and 10 with reference to the issuance of bonds, their terms and maturity dates need no present notice. Section 11 provides that the city shall make provision for the payment of the bonds by fixing rates, fees or charges for the use of and services rendered by the utility sufficient to pay the cost of operation, improvement and maintenance of the utility and to pay the principal and interest upon bonds when due. Other provisions of this section need not be noticed.

In its application for the writ the city directs attention to the above statute and alleges that on July 14, 1953, its governing body duly passed and thereafter caused to be published an ordinance combining its waterworks system and sewage disposal system; that on August 4, 1953, its governing body found that its water and sewage system should be extended, enlarged and improved by the doing of certain alleged works, the total cost of which would be in the sum of $3,000,000 and thereafter by ordinance duly passed and published, a special election was called for September 15, 1953, for the purpose of submitting to the electors of the city the proposition whether the city should issue its water and sewage system revenue bonds; that notice of such election was duly given, and the election was had, the proposition submitted being carried by a majority vote; that on October 20, 1953, by ordinance duly passed and published the city prescribed rates to be charged for the use of and services rendered by the water and sewage system of the city; that on October 29, 1953, pursuant to the authorization by the voters at the election on September 15, 1953, the governing body of the city duly passed and caused to be published an ordinance authorizing the issuance of Water and Sewage System Revenue Bonds, Series A of the City in the principal amount of $3,000,000, the number of bonds, their denomination, maturity dates, etc., being fully pleaded, and that Bond No. 1 and the interest coupons had been presented to the state auditor of Kansas for registration, but that the state auditor had refused and now refuses to register the bond and interest coupons; that the city has complied with all the provisions of law for the issuance of the bonds, and as a matter of right was entitled to have the bonds and interest coupons registered by the state auditor; that the registration of the bonds is

an act which the law enjoins upon the state auditor as a duty resulting from his office; that the city has no plain and adequate remedy in the ordinary course of law if the court does not make an order directing the state auditor to register the bonds and interest coupons, and the city prays that a writ of mandamus issue. Attached to the application were copies of the ordinances above mentioned, the ordinance authorizing issue of the bonds containing a full and complete form of the bonds.

The answer of the state auditor admitted all allegations of fact contained in plaintiff's application, denied that plaintiff was entitled to have the bonds registered and alleged that he rightfully refused to register the bonds for four reasons. The first reason is that Laws 1953, chapter 72 is unconstitutional and invalid because the act is of general nature but by its terms does not have a uniform operation throughout the state and violates article II, section 17, of the state constitution, and constitutes special legislation, and that the act is invalid because it is a special act which confers corporate power in violation of article XII, section 1, of the state constitution. The second reason is that the act is unconstitutional because the title of the act fails to express clearly the subject matter of the act, in violation of article II, section 16, of the state constitution. The third reason is that the act is unconstitutional because it authorizes a city to pay the cost of improving the city's sewage disposal system by using the revenues from its waterworks system thus resulting in taking property arbitrarily and without due process of law in violation of sections 1, 2 and 18 of the bill of rights of our state constitution and the Fourteenth Amendment of the constitution of the United States. The fourth reason is that the act is unconstitutional and void under the last mentioned sections of our state constitution and of the United States constitution because it authorizes a city (a) to make charges for the use of the existing water and sewage facilities already built and owned by property owners of the city; (b) to base such charges on the amount of water that enters the premises irrespective of the use thereof; and (c) to discontinue water service to a water and sewage system customer for non-payment of a sewage system service bill, arbitrarily and without due process of law.

We first note that the state auditor raises no question whatever as to the regularity of the proceedings had by the city of Lawrence leading up to the issuance of bonds—his contention is limited to the

proposition the statute relied on by the city is unconstitutional. In the briefs of both parties the questions of unconstitutionality are stated as above and in the same order, which order we shall follow. In their briefs the parties direct attention to fifty of our decisions as well as to decisions of other courts and other authorities. We do not deem it necessary to take up each of the above cases and authorities cited.

The first question is does the act under consideration violate article II, section 17, of our state constitution which requires that all laws of a general nature shall have uniform operation throughout the state, and article XII, section 1, which prohibits any special act conferring corporate powers. It is clear that if the act be held to be general legislation the question of a special act conferring corporate powers needs no discussion. The gist of the state auditor's contention that the act is special is that the limitation of the act to cities of the first and second class having a population of less than 80,000 inhabitants is arbitrary, illusory and capricious; that although sewage disposal is a problem in the smaller cities, it is more acute in the larger ones; that the limitation excludes Wichita, Kansas City and Topeka from the operation of the act and the classification so created is not natural and germane based upon distinctions which have a reasonable and substantial relation to the subject matter involved, and the state auditor expresses grave doubt the act is constitutional. In support our attention is directed solely to *State ex rel., v. Schoeppel,* 160 Kan. 396, 162 P. 2d 80; *State, ex rel., v. Wyandotte County Comm'rs,* 161 Kan. 700, 171 P. 2d 777; *Carson v. Kansas City,* 162 Kan. 455, 177 P. 2d 212; *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.,* 171 Kan. 581, 236 P. 2d 782; *Missouri Pacific Rld. Co. v. Board of County Comm'rs,* 172 Kan. 80, 238 P. 2d 462; *State, ex rel., v. Board of County Comm'rs,* 173 Kan. 367, 245 P. 2d 1181; and *State, ex rel., v. Board of Education of Common School District,* 173 Kan. 532, 249 P. 2d 689. We think it unnecessary to review at length each of the above cases in which it was held the statutes there involved violated constitutional restrictions. Reference to those cases discloses that in each the classification made was based not on a single population requirement but on that requirement coupled with such other limitations that this court was compelled to hold that by reason of the several restrictions, the classification made was not a natural one, based upon real and substantial distinctions having a reasonable

relation to the subject matter of the legislation, and that by reason of the limitations, the act involved contravened the constitutional provisions. In our opinion the above cases do not compel any conclusion the act in question contravenes the constitutional provisions mentioned above. Many decisions requiring a holding that it does not may be found.

In *State, ex rel., v. City of Topeka,* 168 Kan. 663, 215 P. 2d 644, a similar contention was made against an act pertaining to election costs, which by its terms affected only cities of the first class having a population of more than 70,000 and less than 100,000. In the course of the opinion holding the act did not violate the constitution, it was said:

"Was the classification based on population invalid? As applied to various subjects we have held a classification based *solely* on one population requirement does not constitute special legislation and does not contravene article 2, section 17, of our constitution." (1. c. 665.)

Nine of our decisions are cited in support and reference is made thereto.

In *Redevelopment Authority of the City of Kansas City v. State Corp. Comm.,* supra, the act under its terms was so limited by population requirements as to affect only one city. In that opinion may be found an extended discussion of the question of constitutionality. It was there held that:

"For an act passed by the legislature to have uniform operation throughout the state as required by article II, section 17, of the state constitution, it need not affect every individual, class or community, but it is competent for the legislature to classify and adopt a law general in its nature to the class created.

"The classification so made must be a natural and not an arbitrary, fictitious or capricious one.

"Ordinarily a classification based upon population is sufficient to satisfy the constitutional requirement, but such classification must be a natural one, based upon distinctions which have a reasonable and substantial relation to the subject matter of the act." (Syl. 1, 2, 3.)

It was further held that the attempted classification by population was not a natural one based upon distinctions having a reasonable and substantial relation to the subject matter, but was arbitrary, fictitious and capricious, and the act therein involved was held to violate constitutional requirements.

In *Board of County Comm'rs v. Robb,* 166 Kan. 122, 199 P. 2d 530, the principal question was constitutionality of a flood control statute. The act was upheld. In considering the question whether the act applied to and operated uniformly on all members of the

class, and whether the class created was a natural one or was arbitrary and fictitious and not based on a reasonable and substantial relation to the subject matter involved, this court quoted approvingly from *Borden's Co. v. Baldwin*, 293 U. S. 194, 209, 79 L. Ed. 281, 55 S. Ct. 187, where it was said that when a classification made by the legislature is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption such state of facts exists and one who assails the classification must carry the burden of showing by a resort to common knowledge or to matters which may be judicially noticed, or other proper proof, that the action is arbitrary. (See page 132.)

This court takes judicial notice of the fact that at the time of the passage of the act in question, there were twelve cities of the first class of which nine had a population of less than 80,000, and that there were seventy-nine cities of the second class. Stated in another way, there were eighty-eight cities to be affected by the act, and the only cities excluded were Wichita, Kansas City and Topeka. This court knows from previous and pending litigation that Wichita does not own its water distribution system but is served by what will be here designated a private corporation, and that the combination of water service and sewage disposal could not well be had. The court also takes note of the fact that by reason of G. S. 1949, 13-1220 the municipal water and electric power systems of Kansas City are operated by a board of public utilities, and a combination of a sewage disposal plant with water service would tend to disrupt a present legally existing system. And the legislature also knew the above facts. It also was justified in taking into account the fact the State Board of Health has been carrying on an extensive campaign to compel cities to cease dumping sewage into the streams of the state and otherwise polluting them, and the slightest inquiry would have shown that whether fully adequate or not, Wichita, Kansas City and Topeka each had a sewage disposal plant. The legislature also was aware that as drawn the largest city affected by the act was Hutchinson with a population of slightly less than 35,000, that all other cities affected were smaller, and may have well concluded that Wichita, Kansas City and Topeka, having greater populations and wealth than other cities did not need relief, or perhaps could not be brought into a situation where the act was either necessary or proper as to them. Without further discussion, we hold the classification made in the act is a natural one based on a real and substantial distinction, having a reasonable re-

lation to the subject matter involved; that the classification is not arbitrary, capricious or fictitious, and that the act is not subject to interpretation and construction as special legislation in violation of article II, section 17, of our state constitution.

The state auditor's second contention is that the act involved violates the requirement of article II, section 16, of our constitution that no bill shall contain more than one subject "which shall be clearly expressed in its title" in that the subject matter of the act is not clearly expressed in its title. The argument runs that the constitutional provision is mandatory rather than directory (*Comm'rs of Sedgwick Co. v. Bailey*, 13 Kan. 600 and *Cashin v. State Highway Comm.*, 137 Kan. 744); that the purpose of the title of an act is to direct the mind to the contents of the act so that members of the legislature and the public may be fairly informed and not mislead as to what it embraces (*The State v. Barrett*, 27 Kan. 213, and *Getty v. Holcomb*, 79 Kan. 224, 226, 99 Pac. 218) and that the subject matter of sections 2 and 3 of the act is not clearly expressed in the title; that the title refers only to combining the "management of its waterworks system and sewage disposal system" but does not provide for a "combined water and sewage system" and that "management" of the systems is not the same as "combining" the systems. The above contention is expanded by illustrations which we shall not set forth. In support our attention is directed to *Rathjen v. Finley*, 126 Kan. 270, 267 Pac. 967. In that opinion may be found a history of previous legislation leading up to the passage of Laws of 1927, chapter 2, the title to which related to acquiring fairgrounds and paying for the same. The body of the act, however, contained a provision that under specified conditions, the board of county commissioners should levy a tax for maintenance, paying premiums, and repairing and building improvements. The action by the plaintiff was to enjoin collection of such a tax on the ground the statute authorizing it was unconstitutional as violating article II, section 16. This court sustained the contention. We think it clear the above case was properly decided, but that it is not decisive here.

In *The State v. Topeka Club*, 82 Kan. 756, syl. ¶ 1, 109 Pac. 183, it was held that when a statute is being attacked as violating the above constitutional provision for the reason that it is not within the title of the act, the title will be liberally construed for the purpose of upholding the law.

*Getty v. Holcomb,* supra, was an action in mandamus in this court to compel the county clerk to produce ballots for use in an election contest. Although the writ was denied for other reasons, this court considered the defendant's contention that as the title to the act in question provided for the printing and distribution of ballots, for nominations for public offices, for regulating holding of elections and for enforcement of secrecy, and did not include any provision for production of ballots on contest of an election, such a provision in the body of the act was not included in the title and therefore the act was invalid. In the course of the opinion it was said the constitutional mandate will not be interpreted in any narrow, technical or illiberal spirit, that it relates to substance and not to form; that the purpose of a title is to direct the mind to the contents of the act so that members of the legislature and the people may be fairly informed and not deceived as to what the act embraces, and although the subject may be single, it may be very comprehensive and therefore extend to and include any number of pertinent legislative details, and any phraseology by way of title which clearly indicates the subject to which all such details may relate will be sufficient. It was concluded the provision for production of the ballots at an election contest was not unconstitutional.

Many other cases elucidating the principles above discussed may be found in the annotations to the above section of the state constitution as printed in G. S. 1949, pg. XLVIII and following pages.

In our opinion the contention of invalidity cannot be sustained. The state auditor's contention is predicated on only a part of the title and not on the title as a whole. He would read "combine the management of its waterworks system and sewage disposal system" in such manner that both systems were to persist independently of each other and only supervisory control in a single official or group of officials was intended. That we think is a narrow and illiberal interpretation, when it is borne in mind that absent any statute whatever of this particular nature, the management or supervision has always been in the governing body of the city. But we need not rest on any such conclusion for the language of the title continues that the city is authorized to issue revenue bonds for the "improvement of such combined system" which is clearly indicative that the previous language is not susceptible to the interpretation placed on it by the state auditor, but that taken in all its parts, a member of the legislature and the public reading the title would

arrive at the conclusion the city was authorized to combine its water system and its sewage disposal system under one management and to issue revenue bonds for the improvement of the combined system. The state auditor's contention of invalidity because the title does not clearly express the subject matter of the act is not sustained.

The state auditor's third contention is that the act is unconstitutional because it authorizes the city to pay the cost of improving its sewage disposal system by using the revenues from its waterworks system, thereby resulting in taking property arbitrarily and without due process of law in violation of sections 1, 2 and 18 of the bill of rights of our state constitution and the fourteenth amendment of the' Constitution of the United States. The contention might as well have been stated it permits revenue from the sewage disposal system to pay the cost of the waterworks system. Either statement is on a false basis. The statute authorizes the combining of the two systems and when that is done there exists, not two systems, but one combined system and it is for the improvement of the combined system that revenue bonds may be issued, to be retired from the proceeds arising from the collection of rates and charges for the use thereof.

The state auditor presents some argument that perhaps some person would want water service and not sewage disposal service, and if so he is penalized by being compelled to pay moneys which may go to maintaining sewage disposal. The argument ignores the fact that the charges made are for the maintenance and improvement and extension of a single system. It also presents no different situation legally than though he had been compelled to pay an assessment for construction of a lateral sanitary sewer which he did not choose to use. The service is available to him. It is his choice not to use it. And conversely it is difficult to imagine how he would use the sewage disposal service unless he used the water service. Finally, the state auditor argues that such a combined system imposes an arbitrary burden upon water users; that a city's waterworks system and its sewage system should be operated as separate facilities with separate charges for each service. The powers of a city and how it should conduct its affairs are legislative functions. The only justiciable question is whether the authority granted or the exercise of it may be denominated as arbitrary and unreasonable. On the latter point we are referred to authorities that city ordinances must be reasonable and operate uniformly, and that may

be conceded. The same is true of all laws of a general nature, article II, section 17, of our constitution. We are not, however, persuaded that because every citizen of a city may not avail himself of every service rendered by his city, the statute authorizing it or the ordinance fixing rates and charges is either unreasonable or does not operate uniformly. The third contention is not sustained.

The state auditor's fourth contention is that the act in question violates sections 1, 2 and 18 of the bill of rights of the state constitution and the Fourteenth Amendment to the Constitution of the United States: (*a*) by authorizing the city to make charges for the use of the existing sewage system already owned by it and to make charges for the use of the existing water and sewage facilities already built, owned and paid for by the property owners of the city; (*b*) by permitting sewer charges to be made on the basis of the amount of water that enters the premises irrespective of the use of such water; and (*c*) by permitting discontinuance of water service to a water and sewage system customer for nonpayment of a sewage system bill.

As a preliminary to his discussion of the lettered subdivisions, the state auditor says the statute creates a new kind of municipal activity in providing for the construction of sewage disposal systems with proceeds arising from the use thereof; that such systems are to protect the health of the city's inhabitants, and for many years the cities of the state have issued general obligation bonds paid by taxes on all property, or in cases that sewer lines have been constructed by proceeds of special assessments against specific property, and that any statute which reverses the practices previously followed and attempts to place a sewage disposal system on the same commercial basis as a proprietary activity should be scrutinized with the greatest care. Assuming the proposition stated is correct, it is the legislature, rather than the court, which determines the policy and authority of the city. The court is not concerned with the wisdom of that policy, but only with whether the policy offends the fundamental standard fixed by the constitution of the state or of the United States.

Taking up subdivision (*a*) of his contention, the state auditor contends that the ordinances of the city enacted pursuant to the challenged statute are invalid because they authorize the imposition of sewage system charges for the use of sewage facilities already constructed and paid for; that the proposed charge is not limited

to the use of improvements which will be constructed with the proposed revenue bonds, and the result is to deny the residents of the city the right to use their existing sewage system unless a service charge is made. This argument assumes that the sewage system persists as a separate system, which is not correct. But even if it were correct, it does not follow that a charge for use could not be made. The mere installation of sewers is not the end result. Even though it were possible to look far into the future and to provide, at the time of its original installation, all the main and lateral sewers that would meet the requirements of the city and its future growth, the mere fact the sewer lines were so laid either at the expense of the city at large or by assessments against particular sewer districts, the system would be unavailable for use unless there be provision made for the constant flushing of the sewage deposited by the introduction of water at the place of original deposit and at various places along the course of the system. Ordinarily the water used at the original deposit locations is purchased from the city, but at all other places it is furnished by the city. There is necessarily expenditure of public, as well as private funds, to furnish the necessary water and other maintenance, failing which the system would not function, in which event not only would the health of the city not be protected, it would be endangered. A sewage system cannot be divided so that one who pays for a lateral sewer may say he has satisfied his obligations. He uses the main sewers installed from the proceeds of a general tax levy and perforce he uses any extensions by way of extended sewer mains, sewage disposal plants and the like. The state auditor cites no authority and we know of none, that warrants any conclusion that, under the combined waterworks and sewage disposal system, the city may not make a charge for the services rendered simply because lateral sewers have been constructed by special assessments and main sewers have been constructed by public taxation at some time in the past.

Under subdivision (b) the state auditor contends that the sewage disposal charges fixed by the ordinance of the city are invalid because such charges are based on the amount of water that enters the premises, irrespective of the use of such water. He contends the charge is not based on the cost or value of the sewage service, nor on the amount of the use the occupant of the premises may make, and that such occupant may use large amounts of water that do not enter the sewage system, but nevertheless he may be com-

pelled to pay a charge based on water furnished him by the city. In support, the state auditor cites no authority.

No purpose will be served by a detailed recital of all the provisions of the ordinance and our review is limited to the question involved. By way of preamble the ordinance recites that the city had previously combined its waterworks system and its sewage disposal system into one system; that the governing body had determined that such system should be improved by extending and improving its water supply, water treatment, distribution system, storage tanks, pumping stations and other specified works and by constructing a sewage treatment plant, outfall sewers, sewage pumping and lift stations and other specified works, and had submitted to the electors the proposition of voting revenue bonds in the amount of $3,-000,000 to pay the cost thereof and that the proposition carried; that under the above statute, it was the duty of the governing body of the city to make provision for the payment of the bonds by fixing rates, fees or charges for the use of the system sufficient to pay the cost of operation, improvement and maintenance of the utility and to pay the principal and interest upon the bonds when due, and it was ordained that *from and after the date of delivery of the bonds* the rates charged for water service should be as follows. We note only that graduated charges based upon amounts of water used are specified, applicable to customers within the city, whose initial rate is $1.50 per month for the first 2,000 gallons, and applicable to other classifications needing no present notice, and that *under the same condition as to delivery of the bonds,* the initial charge for sewage disposal should be as follows: In substance the charge for a single family residence served by a single water meter and not discharging water from a non-conserving air conditioning equipment, $1.25 per month; for a single family residence as above but discharging water from an air conditioning equipment, for the first 10,000 gallons per month, $1.25 per month and other rates for greater amounts; for multiple family residences, apartments, dormitories, hotels and similar specified places, not covered by the next stated situation, for the first 10,000 gallons, $1.25 per month and other rates for greater amounts; and for any institutions, business or industry having a sewer connection and discharging sewage of a character which places an unusual burden on the system such amount as may be fixed from time to time by the governing body. By another section a rate is fixed for use of sew-

age disposal where the water is not obtained from the city. By still another section provision is made where water is used for commercial and industrial purposes and for determining the rate for sewage disposal in such cases. It is further provided all bills for water and sewage disposal shall be due as designated and, omitting details, that if any bill for water and sewage disposal shall remain unpaid by the fifteenth of the month following rendition of the bill, water service shall be disconnected and so remain until past bills for water and sewage disposal service or either are paid in full with fixed charges for cutoff and reconnection. Other provisions of the ordinance need no present attention.

In our opinion there is no need to dwell at length on the proposition that there is rather a direct ratio existing between the amount of water furnished the great majority of water consumers and the amount of waste water and other wastes that are disposed of by the sewage system. We recognize that there are exceptions to the above. One is that water not furnished by the city may be cast into the sewer. The other is that all water furnished by the city may not be cast into the sewer. Perhaps it is impossible to enact any ordinance that will provide any charge that in a particular instance may not be unfair, but taken as a whole the ordinance under attack discloses a legislative judgment as to rates generally and as to rates where exception should be made.

The city directs our attention to a number of cases but we refer only to the following. In *City of Maryville v. Cushman* (Mo.), 249 S. W. 2nd 347, it was said:

"Appellants' argument, without citation of authority, that to base the charge for the sewer service upon the quantity of water used upon the premises is unreasonable, is wholly without merit. This contention again overlooks the basic fact that water and sewerage systems are now one."

In *State v. City of Miami*, 157 Fla. 726, 27 So. 2nd 118, decided in 1946, the court said:

"Nor has our attention been directed to any more proper, fairer, or more equitable method of arriving at the amount to be charged the user of the facility than that method which is here authorized." (l. c. 738.)

And see also *Houchins v. Beckley*, 127 W. Va. 306, 32 S. E. 2d 286, and *Sharp v. Hall*, 198 Okla. 678, 181 P. 2d 972, where sewage service charges based on water used were sustained.

Before the ordinance under attack may be stricken down because of the manner in which the rates are charged for services rendered

we must be able to say that the rates promulgated are arbitrary, unreasonable and confiscatory and that we cannot do.

Under subdivision (c) the state auditor contends that the provision of the ordinance authorizing discontinuance of water service for nonpayment of sewage system service is arbitrary and unreasonable under sections of the constitution last above mentioned. Under this heading he continues to insist that the two facilities are separate and distinct and frequently serve different customers. What we have said heretofore about unity of the system will not be repeated. And we question correctness of the statement that frequently the water service and the sewage disposal service serve different customers. On the contrary, we are of the opinion it is the exception, rather than the rule, that a customer uses only one of the two services. In support of his contention that to deny a water user the right to water service because he is in default in payment of sewage service constitutes arbitrary and unreasonable action on the part of the city, the state auditor quotes from *MacMahon v. Baumhauer*, 234 Ala. 482, 175 So. 299 (decided in 1937) as follows:

"We are of the opinion that it would be unconscionable to permit a city which had required its citizens to destroy all other sanitary equipment, and compel connection with a public sewerage system, to deny them its use although all reasonable charges for water for domestic use was paid, by assessing an extra charge for allowing the same water to flow through such sewer, and for failure to pay such extra charge, disconnect and destroy the sewerage connection, and deny water service. This would be tantamount to taking property without due process of law."

The city in response cites *State v. City of Miami*, supra, where it was said:

"It is uniformly held that the City may cut off the water being furnished by the City to a consumer when such consumer fails to pay the water bill. See 67 C. J. 1266 and many cases cited therein, including *Miami Water Co. v. City of Miami*, 101 Fla. 506, 134 So. 592.

"It appears to us that if no constitutional rights of the owner or occupant of premises are violated by shutting off the water for non-payment of the water bill, no such right will be violated by shutting off the water for non-payment of the bill for use of the sewage disposal system, the two services being so interlocked that neither can be effective without the other.

"This was recognized in the case of *Gatton v. City of Mansfield*, 67 Ohio App. 210, 36 N. E. (2d) 306.

"It must also be observed that the Legislature has specifically authorized the City of Miami to use this means for the enforcement of the payment of the charges for the sewer service. See section 10, chapter 23407, supra.

"We are conscious of the fact that the Supreme Court of Alabama in the case of *MacMahon v. Baumhauer*, 234 Ala. 482, 175 So. 299, reached an op-

posite conclusion in discussing this question but we are not willing to follow that court in this regard because it appears to us that the Alabama court entirely overlooked the inter-dependence of the sewer system on the water system and also that the two were so closely related that they could, as was said in the Gatton case, supra, be rightfully considered as one transaction. It is also true that it does not appear in the Alabama case that there had been legislative authority to combine the water system and the sewer system under one operation as there has been here." (l. c. 740, 741.)

And see also *State v. City of Daytona Beach*, 160 Fla. 204, 34 So. 2d 309; and *Patterson v. City of Chattanooga*, 192 Tenn. 267, 241 S. W. 2d 291.

In our opinion the conclusion of the Florida court was correct and should be followed here.

The plaintiff city is concededly within the terms of the statute under attack. The regularity of its proceedings under the statute is not in question other than on the legal questions of constitutionality. Upon the whole record we conclude that the state auditor's asserted reasons for refusal to register the bond tendered are insufficient in law, and that judgment should be in favor of the plaintiff city.

The purpose of the state auditor in refusing to register the bond tendered was to have the legal questions submitted determined and that has been done. This court will retain jurisdiction, and if the bond tendered is not registered within ten days from the filing of this opinion, a writ of mandamus will issue. The costs are taxed against the city.

Judgment in accordance herewith and in favor of the plaintiff city is ordered and adjudged.