No. 40,997

WATER DISTRICT No. 1 OF JOHNSON COUNTY, in the state of Kansas, *Appellee,* v. GEORGE ROBB, State Auditor of Kansas, *Appellant.*

(318 P. 2d 387)

Opinion filed November 21, 1957.

*Fred W. Rausch, Jr.,* Assistant Attorney General, argued the cause, and *John Anderson, Jr.,* Attorney General, was with him on the briefs for appellant.

*Floyd F. Shields,* of Topeka, and *Robert B. Fizzell,* of Kansas City, Missouri, argued the cause, and *Harry W. Colmery* and *James E. Smith,* both of Topeka, and *Robert B. Fizzell, Jr.,* and *Norman E. Gaar,* both of Kansas City, Missouri, were with them on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: Appellee, Water District No. 1 of Johnson County, Kansas, filed an application for a writ of mandamus in the district court of Shawnee County, Kansas, to require the appellant, State Auditor, to register $20,000,000 principal amount of water revenue bonds of Water District No. 1 of Johnson County, Kansas, and interest coupons attached thereto.

The appellee Water District was organized, created and established under and in compliance with the provisions of Laws of 1951, Ch. 240, as amended by Laws of 1953, Ch. 159 (G. S. 1955 Supp., 19-3501 to 19-3521, incl.), said statute having been further amended by Laws of 1957, Ch. 192.

A five-member governing body for appellee Water District was duly elected on December 15, 1953. Thereafter, appellee's water district board appointed a survey commission to make an investigation of and report on all public improvements necessary to secure and insure an adequate water supply and distribution system. The survey commission made such report to the water district board on or about February 17, 1956, whereupon the water district board prepared a plan which it deemed the most practical and economical for an adequate water distribution system and supply of water for the appellee District. This plan, approved by the appellee's board on or about August 6, 1956, provided for the acquisition by purchase, condemnation or otherwise of the water supply and distribution system situated in the District owned by Kansas City Suburban Water Company, Inc., and improving, extending and enlarging said system, all at an estimate aggregate cost of $20,000,000. The plan further provided for the issuance of water revenue bonds of the appellee District not in excess of said amount to pay such cost.

The above plan was submitted to the voters in the District on November 17, 1956, for their approval. The exact proposition submitted to the voters at said election was as follows:

"Water District No. 1 of Johnson County, shall be authorized to obtain by construction, purchase, condemnation or otherwise, a water supply and dis-

tribution system at an estimated aggregate cost to the Water District of Twenty Million Dollars ($20,000,000), and to issue revenue bonds not in excess of such amount in payment of the same.

Yes _____
No _____"

Notice of the foregoing election was duly given as required by said statutes, the election was duly held on Nevember 17, 1956, and the proposition submitted was approved by a majority of the qualified electors of the appellee District voting on the proposition, the vote being 8,813 ballots for said proposition to 1,750 ballots against said proposition.

Pursuant to Laws of 1957, Ch. 192, § 1, the board of county commissioners of Johnson County, Kansas, on or about April 22, 1957, adopted a resolution fixing May 17, 1957, at 10:00 o'clock a. m., at the public hearing room in the Courthouse in Olathe, Kansas, as the time and place for a public hearing as to whether or not the appellee Water District is of public utility. Notice of such hearing was duly given as required by said statute and such hearing was duly held on May 17, 1957, at the hour and place specified in said notice. After hearing all persons desiring to be heard, the county commissioners adopted a resolution finding and determining that the creation and establishment of the District will be of public utility, and ratified and confirmed the creation and establishment of the appellee District.

Thereafter, appellee's board negotiated and entered into an agreement with Kansas City Suburban Water Company, Inc., dated July 17, 1957, to purchase, subject to the approval of the voters of the appellee District, the water supply and distribution system of the Company situated in the District, the base purchase price of such system being $14,531,279.46 as of December 31, 1956, plus additional adjustments to be determined as of the close of business on the date of closing. After notice was duly given, a special election was held in the District on September 7, 1957, to ratify the purchase of the water supply and distribution system owned by Kansas City Suburban Water Company, Inc., in accordance with said negotiated agreement and at an estimated aggregate cost to the Water District of $15,250,000. The exact proposition submitted to the voters at said election was as follows:

"Water District No. 1 of Johnson County, shall be authorized to acquire by purchase, in accordance with the terms of the negotiated agreement published in connection with the notice of this election, the water supply and distribution

system of Kansas City Suburban Water Company, Inc., at an estimated aggregate cost to the water district of Fifteen Million Two Hundred Fifty Thousand Dollars ($15,250,000).

Yes _____
No _____ ”

The proposition submitted was duly approved by a majority of the qualified electors of the appellee District voting on the proposition, the vote having been 4,998 ballots for said proposition to 88 ballots against said proposition.

Thereupon appellee's board adopted a resolution authorizing the issuance of $20,000,000 principal amount of Water Revenue Bonds, Series of 1957, as approved in the election held on November 17, 1956. A resolution setting forth all of the terms and provisions of said revenue bonds, together with the provisions relating to the collection, segregation and application of the revenues of the water supply and distribution system of the District, is fully set forth in the record, the details of which are immaterial to relate herein.

The appellee thereupon prepared a complete transcript of the proceedings leading up to the issuance of said Water Revenue Bonds, Series of 1957, of the appellee Water District, and said transcript, properly certified, was presented to the appellant State Auditor together with the original executed bond No. 1 of said issue. The appellee District requested the appellant as State Auditor to register said bonds and the interest coupons attached thereto. The appellant, however, upon advice of the Attorney General, has refused to register said bonds on the ground that Laws of 1951, Ch. 240, as amended by Laws of 1953, Ch. 159, being G. S. 1955 Supp., 19-3501 to 19-3521, incl., and further amended by Laws of 1957, Ch. 192, were unconstitutional, illegal and invalid and that the water revenue bonds of the appellee District were likewise invalid. This action was filed to compel the registration of such bonds.

The appellee Water District is located in the northeast corner of the state in an area of Johnson County, adjoining Kansas City, Missouri, on the east and Kansas City, Kansas, and its immediate suburbs on the north. The area of the Water District is urban in character being thickly populated throughout with large residential developments and substantial retail business districts included therein. The District has a population between 85,000 and 90,000, and includes substantially all of Mission Township and about half

of the area of Shawnee Township in Johnson County which encompasses the entire area of three second class cities, Merriam, Roeland Park and Shawnee, four third class cities, Leawood, Westwood, Mission and Countryside, about one-half of the area of one city of the first class, Prairie Village, and about one-half of the area of one city of the second class, Fairway. Over half of the population of the District lives outside the corporate limits of such cities. The District also includes an area in Wyandotte County extending about two miles in length along the boundary line between Johnson and Wyandotte Counties, with a depth in Wyandotte County varying from a small amount to approximately a mile.

The remainder of the areas of Johnson and Wyandotte Counties adjacent to the line between the counties but outside the boundaries of the appellee District is thickly populated and is developing at a rapid rate. Such areas are conveniently located near the Kansas River, such river and its bed being the only local source of an adequate water supply.

There is no municipal water supply or distribution system, or any other public corporation or subdivision of the state located in the District which has any water supply or distribution facilities. All water service in the District, as well as sanitary sewer facilities, are furnished by the Kansas City Suburban Water Company, Inc., upon which the population of the District is entirely dependent. Because of the thickly populated nature of the District, it is in great need of fire protection and fire hydrants throughout substantially all its area because of the distribution of population over the area. At the present time this need has been reasonably provided for, no residence in the District being far removed from a fire hydrant.

The water service furnished by the private water company in the past has at times proved inadequate for the needs of the Water District. Until the last year or so, there were frequent interruptions in service and a restricted supply of water which required rationing. The average water rate throughout the state in 1955, according to the Kansas Government Journal of May, 1956, was 24.3 cents per thousand gallons. The average rate charged by the aforesaid Company has been approximately $1.00 per thousand gallons.

Johnson and Wyandotte Counties, Kansas, and Jackson and Clay Counties, Missouri, constitute the Kansas City, Missouri, Metropoli-

tan Area as defined by the Census Bureau of the Federal Government. Johnson and Wyandotte Counties, together with Leavenworth County, in Kansas, are included with certain counties in Missouri in the creation of the District known as the "Missouri-Kansas Metropolitan Development District." (Laws of 1957, Ch. 198.)

The number of water customers in the appellee District has increased from 6,700 in August, 1947, to 24,501 in October, 1957. Its assessed valuation of taxable property has increased from $55,467,-983 in 1947 to $140,468,871 in 1957. Approximately 80% of the population and assessed valuation is within Mission and Shawnee Townships.

The trial court made extensive findings of fact and conclusions of law. There is no controversy as to the facts in this case. The foregoing represents a summary of the facts essential to this appeal.

The issues presented in this case arise solely from an attack upon the constitutionality of the acts pursuant to which the bonds have been issued.

On October 17, 1957, George Robb, the State Auditor, advised the Secretary of Water District No. 1 of Johnson County, Kansas, by letter, the pertinent portion of which reads as follows:

"Please be advised that upon the advice and counsel of the Attorney General of the State of Kansas, this office will not register said Bonds, for the reason that the act under which said Bonds are attempting to be issued, in the opinion of the Attorney General is unconstitutional."

The lower court on the 28th day of October, 1957, concluded that:

"2. Chapter 240, Session Laws of 1951, Chapter 159, Session Laws of 1953, and Chapter 192, Session Laws of 1957, are in all respects constitutional and valid.

"3. The plaintiff, Water District No. 1 of Johnson County, is a legally organized and existing water district with all of the rights and powers vested in water districts under and by virtue of the provisions of the statutes referred to in paragraph 2 hereof.

"4. The $20,000,000 principal amount of Water Revenue Bonds, Series of 1957, of the plaintiff water district have been duly authorized and upon the issuance thereof will constitute valid, legal and binding obligations of said plaintiff water district, and a full and complete transcript of the proceedings leading up to the issuance of said bonds, certified by the secretary of the plaintiff's water district board, has been filed in the office of the defendant, State Auditor.

"5. The defendant, George Robb, State Auditor of Kansas, is legally obligated to register said bonds and the interest coupons attached thereto in the manner provided by law."

The lower court then entered judgment directing the State Auditor (appellant) to register the issue of Water Revenue Bonds, Series of 1957, of the appellee Water District in the principal amount of $20,000,000, together with interest coupons attached thereto, upon presentation of the same to him by the appellee. Appeal was duly perfected to this court, pursuant to proper procedures unnecessary to relate, raising the various constitutional issues advanced by the appellant. They will be considered in sequence.

## I.

Do the 1951 and the 1953 acts under which the appellee Water District was created violate Article 2, Section 16 of the Constitution, which provides that "No bill shall contain more than one subject, which shall be clearly expressed in its title"?

The title of Ch. 240, Laws of 1951, is:

"AN ACT relating to water districts; providing for the creation thereof; granting all such districts the power of eminent domain; making provisions for the governing body and granting said body certain powers; providing for the establishment and operation of a water supply and distribution system; granting power to issue revenue bonds; providing procedure for elections; providing for the levying of certain taxes."

The title of Ch. 159, Laws of 1953, which amends four sections of the 1951 act is:

"AN ACT relating to the creation of a water supply and distribution district in the counties of Johnson and Wyandotte, and providing for its government, financing, operation and maintenance, amending sections 19-3502, 19-3503, 19-3506 and 19-3517, General Statutes Supplement of 1951, and repealing said original sections."

The purpose of a title is to direct the mind to the contents of a bill or of an act, so that members of the legislature and the public may be fairly informed and not deceived or misled as to what it embraces. (*Getty v. Holcomb,* 79 Kan. 224, 99 Pac. 218.) The constitutional provision is· an imperative mandate to the legislature commanding them that no bill shall contain more than one subject which shall be clearly expressed in the title. (*Comm'rs of Sedgwick Co. v. Bailey,* 13 Kan. 600; and *Cashin v. State Highway Comm.,* 137 Kan. 744, 22 P. 2d 939.) And all provisions of an act must be directly related to the subject expressed in its title. (*State v. Barrett,* 27 Kan. 213.) But it is not necessary that the title be a synopsis or abstract of the entire act in all its details. It is sufficient if the title indicates clearly, though in general terms, the scope of

the act. (*In re Sanders, Petitioner,* 53 Kan. 191, 36 Pac. 348.) Thus, an "Act in relation to roads and highways" and repealing certain enumerated acts was sufficient where the provisions imposed a head tax. (*City of Winfield v. Bell,* 89 Kan. 96, 130 Pac. 680.) Similarly "An act relating to cities of the first class," and repealing certain specified sections was upheld on the ground that matters contained therein need not be set out in detail in the title. (*City of Wichita v. Sedgwick County,* 110 Kan. 471, 204 Pac. 693.)

Analogous to the case at bar is *State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618, which upheld the validity of an act entitled "An act relating to municipally owned water and light plants in certain cities, and creating a board of control, construction, operation and management thereof." The act created a board of public utilities to manage the water and light plants, defined the powers of the board, provided for the appointment of employees, authorized the board to request the mayor to call an election to submit the proposition to issue bonds, and provided for the issuance of revenue bonds already voted. (See, also, *State, ex rel., v. Board of Education,* 173 Kan. 780, 252 P. 2d 859; *City of Lawrence v. Robb,* 175 Kan. 495, 265 P. 2d 317; *State, ex rel., v. Kansas Turnpike Authority,* 176 Kan. 683, 273 P. 2d 198; and *State, ex rel., v. Urban Renewal Agency of Kansas City,* 179 Kan. 435, 296 P. 2d 656.)

Where a statute is being attacked as violating the above constitutional provision for the reasons that it is not within the title of the act, the title will be liberally construed for the purpose of upholding the law. (*State v. Topeka Club,* 82 Kan. 756, 109 Pac. 183; *Philpin v. McCarty, Supt. &,* 24 Kan. 393; and *Rathbone v. Hopper,* 57 Kan. 240, 45 Pac. 610. See, also, *State, ex rel., v. McCombs,* supra.)

The foregoing controverted titles in the case at bar clearly express the subject matter of the acts, namely, the creation of water districts, their powers, functions and operation. Some of the most important powers are mentioned in the titles such as the power of eminent domain, the power to issue revenue bonds, and the power to levy certain taxes. In the 1953 amendment the territory within which water districts could be formed was mentioned in the title, Johnson and Wyandotte Counties. The titles are amply sufficient to give notice of the subject of the acts.

Appellant contends that certain specific matters covered by the acts are not referred to in the titles. Such matters concern mere

details incident to the operation and functioning of water districts formed under the acts. There is no necessity of referring to such details in the titles. The method of extending a district's boundaries, the procedure to be followed in issuing the district's revenue bonds (the grant of the power to issue revenue bonds being referred to in the title), the scope of the district's power of eminent domain (the grant of the power of eminent domain being referred to in the title), the district's power to contract with other municipalities, these and many other details embraced by the acts are all germane to the subject of the acts—water districts—and that subject is clearly expressed in the titles. It follows that the titles conform to the requirements of Article 2, Section 16 of the Constitution.

## II.

Does the 1951 act as amended in 1953 violate Article 2, Section 17 of the Kansas Constitution, because it is a special law?

Article 2, Section 17, Kansas Constitution, reads in part as follows:

". . . and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

Prior to the 1906 amendment to the Constitution this court adhered generally to the rule that it was for the legislature to determine whether a special law was justified. The evils inherent in the system as it existed prior to the amendment of the Constitution were discussed in *Anderson v. Cloud County,* 77 Kan. 721, 95 Pac. 583. After the Constitution was amended the legislature no longer had the power to finally determine either that a proposed law would have uniform operation throughout the state or that a local condition exists which requires a special law, and it became the duty of the courts to determine the constitutionality of an act without reference to anything the legislature had declared, either in the act in question or in other acts.

The appellee concedes that the 1951 act as amended in 1953 does not have a uniform operation throughout the state. It is a special law enacted by the legislature for the express purpose of authorizing the formation of water districts in highly populated urban areas located in Johnson and Wyandotte Counties on both sides of the county line. Special acts of the legislature are not entirely prohibited. Where a special act is necessary, it can be passed as such.

It is not necessary to make it appear general when its application is intended to be special. (*State, ex rel., v. High-school District,* 112 Kan. 616, 212 Pac. 69; *Murray v. Payne,* 137 Kan. 685, 21 P. 2d 333; and *State, ex rel., v. Wyandotte County Comm'rs,* 140 Kan. 744, 39 P. 2d 286.)

If a local situation exists which properly calls for legislative attention and the particular facts make a general law inapplicable, there is nothing in the Constitution which would invalidate a legislative act simply because it is special in character. (*Rural High School v. Brown County Comm'rs,* 153 Kan. 49, 109 P. 2d 154.) The mere fact that a special act is enacted under the guise or disguise of a general act does not make it invalid, if, in fact, the purpose is lawful and proper and a special act is required to make it effective. (*Higgins v. Johnson County Comm'rs,* 153 Kan. 560, 112 P. 2d 128.)

Upon the facts in the instant case it is apparent that there is no area in the State of Kansas outside the three large cities (all of which cities now own their waterworks systems) which bears the slightest resemblance to the Mission and Shawnee Townships area in Johnson County. No other such area is comparable either in population or in location. No other highly populated area is immediately adjacent to another large county, thereby creating the special utility problems of communities divided by a county line. No other such area includes a large number of incorporated cities (with no municipal water systems) requiring a cooperative effort throughout the entire area in order to overcome the difficulties inherent in attempting separate municipal action. No other area is a part of a metropolitan district (as defined by the federal census bureau) with a population of over 900,000 and constantly increasing. And, furthermore, no other area in the state is so located that, within the foreseeable future, it will ever be confronted with the problems now faced by the area in Johnson and Wyandotte Counties adjacent to the county line dividing such counties. No other heavy concentrations of population in the state are divided by a county line.

These special and unique conditions existing in the Mission and Shawnee Townships area in Johnson County and extending northward across the county line into Wyandotte County gave rise to the enactment of the 1951 and 1953 acts under which the appellee District has been created. Such conditions fully sustain the

action of the legislature in providing a method by which water districts could be formed in Johnson and Wyandotte Counties to meet the particular needs and problems confronting that area. It was wholly unnecessary to seek to accomplish the desired result under the guise of general legislation. The facts justified a special law applicable to Johnson and Wyandotte Counties. No general law could have been made applicable.

The Kansas legislature has for many years recognized the heavy concentration of population of Mission and Shawnee Townships in Johnson County, and the proximity of the area to the large populations of Kansas City, Kansas, and Kansas City, Missouri, have created special problems. In an attempt to meet such problems the legislature has enacted special laws dealing particularly with such problems, such as the Shawnee-Mission Rural High School District No. 6 (Laws of 1941, Ch. 336); an act applicable to certain common-school districts in this area (Laws of 1945, Ch. 295); the creation of a park district in Mission and Shawnee Townships in Johnson County (Laws of 1953, Ch. 170); the Shawnee-Mission Hospital District (Laws of 1957, Ch. 197); and an act relating to certain common-school districts in Shawnee-Mission Rural High School District No. 6 in Johnson County, Kansas (Laws of 1957, Ch. 415).

By enacting the statutes mentioned above and other similar statutes the legislature has merely recognized that the population and urban character of the area referred to including its location as a part of a large metropolitan district, have brought about a condition which requires special legislation.

The acts of 1951 and 1953 under which appellee Water District was organized and created do not violate Article 2, Section 17 of the Constitution.

### III.

Does the 1951 act as amended in 1953, under which appellee was created, violate Article 12, Section 1 of the Constitution, which provides that "The legislature shall pass no special act conferring corporate powers. . . ."?

Appellant contends that the water district law, now G. S. 1955 Supp., 19-3501, *et seq.*, as amended by Laws of 1957, Ch. 192, constitutes a special act conferring corporate powers on the appellee District in violation of Article 12, Section 1 of the Constitution. While it is true that any water district formed under the

statutes will have the powers conferred generally on districts so created, this does not constitute an act of the legislature conferring corporate powers. The water district act merely provides the *procedure* for creating or organizing water districts. The situation is similar to that existing under the general corporation code applicable to private corporations. (G. S. 1949, Ch. 17, Art. 24, *et seq.*, and 17-2401, *et seq.*) When a private corporation is so organized, it will have the powers vested in such corporations by the terms of the statute. The provisions of G. S. 1955 Supp., 19-3502, authorize the creation of "One or more water districts" in Johnson and Wyandotte Counties.

Article 12, Section 1 of the Kansas Constitution, applies to any special act conferring corporate powers on private corporations, and on municipal corporations, but it has no application to a *quasi* corporation, such as a county (*Comm'rs of Marion Co. v. Riggs*, 24 Kan. 255; and *State, ex rel., v. Shawnee Co.*, 57 Kan. 267, 45 Pac. 616), a school district (*Beach v. Leahy, Treasurer*, 11 Kan. 23; and *School District v. Ryker*, 64 Kan. 612, 68 Pac. 34), a township (*Eikenberry v. Township of Bazaar*, 22 Kan. 556), or some other similar unit.

G. S. 1955 Supp., 19-3502, provides that a water district organized under the act is a "quasi municipal body corporate." Being a *quasi* corporation, Article 12, Section 1 of the Constitution has no application to the appellee Water District.

### IV.

Does the 1951 act as amended in 1953, under which the appellee Water District was created, violate Article 2, Section 1 of the Constitution, by delegating legislative power to the petitioning electors?

Article 2, Section 1 of the Kansas Constitution, provides that "The legislative power of this state shall be vested in a house of representatives and senate." Appellant contends that Laws of 1951, Ch. 240, § 3, as amended by Laws of 1953, Ch. 159, § 2, violate this constitutional provision. The section as amended provides:

"Whenever one thousand (1,000) electors resident within the area of land within any proposed water district shall petition the board of county commissioners of any such county for the creation of any such water district it shall be the duty of the board of county commissioners to ascertain and determine the sufficiency of such petition and upon an affirmative finding to create and establish the proposed water district by adopting an appropriate resolution: . . ."

It is argued that this section simply means that 1,000 electors resident in a populated water district can force the county commissioners to create a water district by merely handing them a sufficient petition. (Citing: *Comm'rs of Wyandotte Co. v. Abbott*, 52 Kan. 148, 34 Pac. 416; *Hovey v. Comm'rs of Wyandotte Co.*, 56 Kan. 577, 44 Pac. 17; and *Willis v. Board of Com'rs.*, 86 Fed. 872. See, also, *State, ex rel., v. Hines*, 163 Kan. 300, 182 P. 2d 865.)

The foregoing quoted section of the water district statute does not mandatorily require the county commissioners to create the appellee water district merely on the presentation of a petition by the electors. It is the duty of the board of county commissioners "to ascertain and determine the sufficiency of such petition *and upon an affirmative finding* to create and .establish the proposed water district . . ." (Emphasis added.)

Presumably the board of county commissioners has some discretion in determining the sufficiency of the petition. This language may mean that if the board is of the opinion that the proposed water district is unnecessary and that it will not be of public utility, the board may find the petition "insufficient." Furthermore, the decision of the board is merely a preliminary step in the functioning of the district.

Under G. S. 1955 Supp., 19-3507 and 19-3508, in order to construct, purchase or otherwise acquire a water supply and distribution system, the water district must issue revenue bonds, and every issue of revenue bonds must be submitted to the voters and be approved by a majority of the votes cast on the proposition.

And if the water district board concludes to purchase an existing water supply and distribution system and shall negotiate an agreement with the owner covering the purchase of the system, the proposition to authorize the purchase of the water supply and distribution system must again be submitted to the electors and carried by a majority vote of the electors voting thereon. (G. S. 1955 Supp., 19-3517.)

In the present case both of these elections were duly held and carried by substantial majorities.

It thus appears that the action of the board of county commissioners in forming the district in the first instance does little more than afford a basis for holding the elections that will ultimately provide for the functioning and operation of the district.

Decisions cited by the appellant on this point have been weak-

ened by more recent opinions on the question. In *Railroad Co. v. Leavenworth County,* 89 Kan. 72, 130 Pac. 855, this court sustained the validity of a statute and of a district formed thereunder, distinguishing the *Abbott* case. (See, also, *State, ex rel., v. Lamont,* 105 Kan. 134, 181 Pac. 617; *State, ex rel., v. Drainage District,* 123 Kan. 191, 254 Pac. 372; and *State, ex rel., v. Urban Renewal Agency of Kansas City,* 179 Kan. 435, 296 P. 2d 656.)

Even if it be assumed that the 1951 act as amended in 1953 is invalid, it has been further amended by Laws of 1957, Ch. 192. By Section 1 of the 1957 act, G. S. 1955 Supp., 19-3503, was amended to provide that upon the presentation of a petition to the board of county commissioners such board shall fix a time for a hearing upon the petition and shall direct the county clerk to give notice of such hearing for three consecutive weeks in a newspaper of general circulation within the proposed district, such notice to describe the boundaries of the proposed district and to state that a hearing by the board of county commissioners will be held at a specified time at which all persons may appear and be heard. The amendment further provides that if after such hearing the board of county commissioners shall determine that the interests of the area will be advanced by the creation of the water district and that a water district therein will be of public utility, the board shall so find and shall create and establish the proposed water district by adopting an appropriate resolution.

The 1957 amendment further provides that if any water district has previously been created and established under the provisions of the 1951 act as amended, and if in such district members of the water district board have been elected, and if the issuance of revenue bonds of such district has been authorized by a majority vote of the qualified electors of the district voting on the proposition at an election duly called and held, then the board of county commissioners, prior to the issuance of such revenue bonds by the water district shall fix a time for a hearing upon the public utility of the district so created and shall direct the publication of a notice of such hearing in the manner hereinbefore specified, such notice to state that a hearing will be had by the board of county commissioners at a specified time on whether or not the district which has been formed is of public utility and that all persons may appear before the board at such hearing and be heard. If after such hearing the board of county commissioners shall determine that the

interests of the area within the district will be advanced by its creation and establishment and that the district will be of public utility, the board shall so find and shall ratify and confirm the creation and establishment of the district by adopting an appropriate resolution. Upon such action the water district shall be a quasi-municipal body corporate with all of the powers and subject to all of the provisions of the acts relating to such water district and all amendments thereto, notwithstanding any irregularities or defects previously existing in the creation of the district.

The facts in the instant case disclose that the board of county commissioners of Johnson County, Kansas, complied in all respects with the provisions of the 1957 act and did by resolution ratify and confirm the creation of appellee Water District, organized under the act of 1951 as amended in 1953.

We therefore conclude that while the legislature cannot delegate its constitutional power to make a law, it can make a law which delegates the power to determine some fact or state of things upon which such law shall become operative, and that the 1951 act as amended in 1953 under which appellee Water District was created, is constitutional and valid, and further, even if the 1951 act as amended was invalid in this respect the 1957 amendment to said act and the procedure with respect to the existence of appellee Water District under such amendment has cured the defect and removed this question from the case.

## V.

Does the 1951 act as amended in 1953 violate Sections 1, 2 and 18 of the Bill of Rights of the Kansas Constitution, and the Fourteenth Amendment of the Constitution of the United States, because it permits the taking of property arbitrarily and without due process of law?

The original acts under which the appellee Water District was organized did not provide that a public hearing should be held on the petition for the formation of a water district, nor did such acts require the publication of any notice to the residents of the proposed district that the creation of the district had been requested and that any interested party could be heard on the petition to form the district. Appellant contends that such procedure involves the taking of the property arbitrarily and without due process of law, and relies upon *Browning v. Hooper*, 269 U. S. 396, 46 S. Ct. 141, 70 L.

Ed. 330; *Embree v. Kansas City Road Dist.*, 240 U. S. 242, 36 S. Ct. 317, 60 L. Ed. 624; and *Fallbrook Irrigation District v. Bradley*, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369.

The 1951 act as amended in 1953 did not provide for the formation of a water district that would result in the levy of special assessments on the property in the district. The statutes merely authorized the imposition of a small *ad valorem* tax for the payment of preliminary expenses and then authorized the issuance, by vote of the electors of the district, of revenue bonds payable solely from revenues to be derived by the water district from the operation of a water supply and distribution system. Under such circumstances, no property was being taken from the residents of the district by the formation of the appellee District. The legislature had merely provided a method for the formation of a *quasi* corporation, an instrumentality of the state.

This contention of the appellant was answered in *Railroad Co. v. Leavenworth County*, supra, where the court held that a special notice or hearing was not essential to a valid levy of a general tax in a taxing district legally created.

The organization of the appellee Water District in the instant case took no property from the residents of the district, either with or without due process of law.

As heretofore discussed under the preceding topic the statutes were amended in 1957 (Laws of 1957, Ch. 192) to provide for a hearing upon a petition to form a water district, with published notice to all parties interested of their right to be heard. Such amendment further provided that as to a district formed under the earlier statute no revenue bonds should be issued by such district until a hearing was had upon the public utility of the district, such hearing to be held upon published notice to all parties interested of their right to be heard. The appellee Water District has complied in all respects with the 1957 law. Even assuming that the prior acts were invalid, compliance with the 1957 law cured any defects which may have existed in the formation of the appellee Water District prior thereto.

## VI.

Does the 1957 amendment of the water district act (Laws of 1957, Ch. 192) violate Article 2, Section 16 of the Kansas Constitution, because its subject is not clearly expressed in its title?

The title of Ch. 192, Laws of 1957, reads as follows:

"AN ACT relating to certain water districts, amending sections 19-3503, 19-3505, 19-3505a, 19-3507, 19-3508, 19-3509, 19-3510, 19-3512, 19-3514, 19-3516, 19-3517, 19-3519, 19-3520 and 19-3521 of the General Statutes Supplement of 1955, and repealing said original sections, and also repealing section 19-3513 of the General Statutes Supplement of 1955."

This subject has been fully discussed in Section I of this opinion. The appellant contends that the foregoing title is insufficient because it does not refer specifically to the various detailed powers incorporated in the act. It is not necessary that the title of an act make reference to the details included in the statute. The 1957 act relates solely to water districts and the title makes specific reference to such power and goes on to specify the sections of the then existing water district statute that were amended and repealed. (*City of Winfield v. Bell,* 89 Kan. 96, 130 Pac. 680.)

Where the new matter in an amended act is germane to the subject of the original act and the title of the original act is sufficiently broad to cover everything embraced in the amended act, the requirements of Article 2, Section 16 of the Kansas Constitution are met. (*Brewer v. City of Pittsburg,* 91 Kan. 910, 139 Pac. 418.)

VII.

Does the 1957 act violate Article 2, Section 17 of the Constitution, which provides that no special law shall be enacted where a general law can be made applicable?

The appellant contends that the 1957 act is a special act in that it attempted to cure an alleged defect in the creation of the appellee Water District. The 1957 act does not, however, attempt in itself to cure any defect in the creation of the appellee Water District nor in the formation of any water district authorized under the earlier statutes. The 1957 act merely provides a method by which an alleged defect in the formation of an existing water district may be corrected.

A curative act of the character of Laws of 1957, Ch. 192, does not come within the scope of the constitutional prohibition against special legislation urged by the appellant. (*Leavenworth v. Water Co.,* 69 Kan. 82, 76 Pac. 451; *Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016; *State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677; and *Beeler & Campbell Supply Co. v. Warren,* 151 Kan. 755, 100 P. 2d 700.)

## VIII.

Does the 1957 amendment of the water district act (Laws of 1957, Ch. 192) violate Article 2, Section 1 of the Constitution, by delegating legislative power to the county commissioners?

Appellant contends that the 1957 act violates the Constitution by delegating to the board of county commissioners the right to determine, after notice and hearing, whether or not a proposed water district is of public utility.

Article 2, Section 21 of the Constitution, provides:

"The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient."

Appellant concedes that a certain amount of power to determine questions of legal importance can be delegated to the county commissioners but it is contended that such delegation must clearly state guides and standards for the local governing body to follow. It is argued that regardless of what reasons may appear at the hearing to show that the creation of the proposed water district would not be in the public interest, the county commissioners may create and establish it if they so desire. The section (Laws 1957, Ch. 192, § 1) reads in part:

". . . If after such hearing the board of county commissioners determines that the interests of the area will be advanced by the creation of the water district and that a water district therein will be of public utility, it shall so find and shall create and establish the proposed water district by adopting an appropriate resolution: . . ."

Appellant relies on *State, ex rel., v. Hines,* supra, where this court recognized that a standard cannot be set up which is so indefinite as to confer an unlimited power.

In *State, ex rel., v. School District,* supra, the validity of a curative act which validated orders made by a county school committee in organizing a new school district was before the court. This court in holding the statute constitutional said:

"Under the authorities above noted, the legislature could have fixed the boundaries of every common-school district in the state—it could have delegated that duty to the state superintendent or the county superintendent, but it need not have done so. *Having power to authorize in advance or to dispense entirely with any intermediate action, it was within its competence to adopt the result of an unauthorized act, and to declare that act operative, effective and valid, and that we think it did.*" (p. 656.) (Emphasis added.)

In *Kowing v. Douglas County Kaw Drainage Dist.*, 167 Kan. 387, 207 P. 2d 457, an attack was made on the order of the board of county commissioners making changes in the boundaries of a drainage district. The court in sustaining the action of the county commissioners recognized that by our constitution the legislature may confer upon the board of county commissioners such power of local legislation and administration as it shall deem expedient.

We are of the opinion that there is no basis for the appellant's contention in the instant case. The board of county commissioners is dealing with a local situation with which it is familiar. It is empowered to act after a hearing at which all interested parties may be heard. Pursuant to the provisions of the act in question the board found that the interest of the area within the appellee Water District "will be advanced by its creation and establishment and that said district is of public utility." Such finding was made pursuant to the act and satisfies its requirements. If the board of county commissioners should make a finding which is arbitrary or unreasonable, the courts will be open to correct the error.

A similar statute was before this court in *Barrett v. City of Osawatomie*, 131 Kan. 50, 289 Pac. 970. In that case the statute authorized persons living outside the corporate limits of a city to petition that the city's water mains be extended. Upon the presentation of such petition it became the duty of the city's governing body to determine whether or not the extension would be "of benefit to the city." The court had no difficulty in sustaining the validity of the statute.

Similarly, the county benefit district road law directs that before an improvement be made the county commissioners shall "find the same to be of public utility." (G. S. 1949, 68-701.) Many hundreds of miles of roads have been constructed throughout the state under this statute on the basis of a finding by the board of county commissioners that the roads would be of "public utility."

We therefore hold that there is no basis for appellant's contention that the 1957 act has improperly delegated legislative power to the county commissioners.

## IX.

Is the water district act as amended invalid on the ground that it contains provisions which are arbitrary, capricious and unreasonable?

Appellant cites Section 2 of the act (G. S. 1955 Supp., 19-3503) which requires that when any water district is created in territory in which a private or public water company is already operating, the district must include all of the area it serves. The argument is advanced that if a small fraction of the district is expensively inconvenient to serve, it makes no difference. The cost of water to the rest of the district is increased for no sound reason and without the consent of either the governing body of the district or its customers.

Appellant further argues that the act arbitrarily and without discretion excludes from any proposed district, the water distribution system or systems owned by a foreign corporation whose water supply is located outside the State of Kansas. Appellant relies generally upon 62 C. J. S., Municipal Corporations, § 38, p. 117, which states:

". . . While the legislature has a liberal range in the exercise of such power [to fix boundaries], the power is not plenary or unlimited and legislative acts which directly fix arbitrary or unreasonable boundaries are invalid." (Citing *State, ex rel., Bibb v. City of Reno*, 64 Nev. 127, 178 P. 2d 366.)

The charge that the act contains provisions which are arbitrary, capricious and unreasonable by reason of the foregoing contentions is untenable. The provisions concerning which appellant complains are designed to protect the existing water facilities in the area and to avoid wasteful investments for which the water users ultimately must pay. The provisions are similar to those contained in the general municipal revenue bond law which prevent municipalities from issuing revenue bonds to duplicate existing utility services. (G. S. 1949, 10-1203.)

The boundaries of a *quasi* public corporation are exclusively a legislative matter. (*Kowing v. Douglas County Kaw Drainage Dist.*, supra.)

The water district act as amended in 1957 is a comprehensive law the provisions of which are well conceived and they are fair and reasonable.

Long established principles which have guided the court in its determination of the constitutionality of legislative enactments are set forth in three recent decisions. (*Marks v. Frantz*, 179 Kan. 638, 298 P. 2d 316; *State, ex rel., v. Fadely*, 180 Kan. 652, 308 P. 2d 537; and *Parmelee v. Ziegler*, 181 Kan. 703, 314 P. 2d 340.)

Judicial examination of any law enacted by the legislature proceeds on the assumption that it is valid unless it contravenes an express inhibition of the Constitution or one necessarily implied from some express affirmative provision of that instrument, and an act of the legislature is not to be stricken down on the ground it is unconstitutional unless infringement of the superior law is clear beyond reasonable doubt. (*State, ex rel., v. Urban Renewal Agency of Kansas City,* supra.)

The electors of Water District No. 1 of Johnson County, Kansas, have authorized the issuance of water revenue bonds in the principal amount of $20,000,000. All proceedings had by the appellee Water District and by its water board have been taken in strict conformity with the provisions of the water district act. We hold that Laws of 1951, Ch. 240; Laws of 1953, Ch. 159; and Laws of 1957, Ch. 192, are not invalid for any of the reasons asserted.

Due to the ugency and necessity of an early decision in the matter, we announced our decision immediately after the appeal was decided, and on November 19, 1957, filed a brief opinion affirming the judgment of the lower court. (See page 1, this volume.) As was said in our former opinion, the judgment of the lower court, directing the State Auditor to register the issue of Water Revenue Bonds, Series of 1957, of the appellee Water District, in the principal amount of $20,000,000, together with interest coupons attached thereto, in the manner provided by law, should be and the same is hereby affirmed.