No. 46,978

BETTY A. BRICKELL; CHESTER EUGENE DAHARSH; PATRICIA M. FINNEY; SHIRLEY J. JOHNSON; IMOGENE KEARNS; J. FRANK LANDWEHR; BERNARD A. LEE; and LEO RATHKE, *Appellants*, v. Board of Education of Unified School District No. 251, North Lyon County, Kansas; LAWRENCE PARKS, MAX DAVIS, CLINTON DAVIES, FRANKLIN MYERS, RONALD GROTHER, BEN PRICE, and MELVIN STANFORD, as Members of the Board of Education of said Unified School District No. 251; Unified School District No. 251, Lyon County, Kansas; State Board of Education of the State of Kansas; JOHN W. FRAZIER, HAROLD H. GRIST, PAUL J. JONES, MRS. DOROTHY BALLARD, MRS. DOROTHY GROESBECK, MRS. CLARENCE CARLSON, WILL T. BILLINGSLEY, HARRY O. LYTLE, JR., KARL M. WILSON and WILLIAM A. BLACK, as Members of said State Board of Education of the State of Kansas, *Appellees*.

. (508 P. 2d 996)

Opinion filed April 7, 1973.

*Roy U. Jordan,* of Emporia, argued the cause and was on the brief for the appellants.

*Elvin D. Perkins,* of Emporia, argued the cause and *Duane D. Guy,* of Emporia, was with him on the brief for appellees, Unified School District No. 251, Board and Members.

*John C. Johnson,* Assistant Attorney General, argued the cause, and *Vern Miller,* Attorney General, and *Erle W. Francis,* Assistant Attorney General, were with him on the brief for appellees, State Board of Education and Members.

The opinion of the court was delivered by

Kaul, J.: This action concerns the closing of an attendance facility known as the Elementary School in Americus. Plaintiffs-appellants are resident electors of the attendance center served by the facility. The attendance center is a part of Unified School District No. 251, North Lyon County. Appellants instituted the action to enjoin the closing of the attendance facility by the Board of Education of Unified School District No. 251. The Board of District No. 251 and its individual members were named defendants and are appellees in this appeal. In the alternative appellants sought relief in the form of mandamus to compel the State Board of Education and its members to act on an appeal from an order made by the State Fire Marshal. The State Board of Education and the members thereof are also appellees in this appeal. For convenience the Board of Education of Unified School District No. 251 will be referred to as the Board of 251, and the State Board of Education will be referred to as the State Board.

Proceedings to close the Americus attendance facility were instigated by the Board of 251 pursuant to the provisions of K. S. A. 72-8213, which was Senate bill No. 761 enacted as chapter 280, laws of 1972. It amended the School Closing Act (K. S. A. 1971 Supp. 72-8213), as amended by 1972 House bill No. 2098, and amended section 3 of 1972 Senate bill No. 650, and repealed the existing sections. We are not concerned with the amendment to Senate bill No. 650 (chapter 279, laws of 1972), which merely changed the effective date of the act which dealt with the admission of dependents of prisoners of war without tuition to certain post-high school educational institutions.

The School Closing Act was first enacted as section 23 of the Unified School District Act of 1963 (chapter 393, laws of 1963) and was codified as K. S. A. 72-6756. In 1967 the act was amended by chapter 399, laws of 1967, recodified and now appears as K. S. A. 72-8213. In 1972 the act was further amended by House bill No. 2098, chapter 278, laws of 1972, and finally further amended by Senate bill No. 761 (chapter 280, laws of 1972) and the existing act K. S. A. 1971 Supp. 72-8213, as amended by 1972 House bill No. 2098, was repealed. Chapter 280, laws of 1972, is now codified as K. S. A. 72-8213, the statute with which we are concerned herein.

Section 1 of chapter 280, laws of 1972, consists of subsections (a) through (h); section 2 amends Senate bill No. 650 (chapter 279, laws of 1972), as previously noted; section 3 repeals the previous law; and section 4 fixes the effective date on publication in the official state paper, which was March 31, 1972.

Subsection (a) of section 1 of the act defines certain terms used in the act and proscribes the closing of any attendance center without the consent of a majority of the resident electors and prescribes the conditions of such consent.

Subsections (b) through (f) deal with specific matters unrelated to any of the issues herein.

The controversy herein stems from the provisions of subsection (g) which reads:

"Whenever the state fire marshal has (1) ordered a school building to be closed or has recommended the closing of a school building or (2) made recommendations for the repair, remodeling or restoration of a school building to make it safe, and the board of education of such school district makes a finding that the cost of such restoration, repair or remodeling is unwarranted or excessive, such board of education, under either of the foregoing circumstances, may close and discontinue the use of any such building, without complying with the requirements of subsection (a) of this section. Notwithstand-

ing any other provision of law to the contrary, whenever the state fire marshal issues an order to which this subsection (g) would apply, the board of education of the affected school district, at its first meeting after receiving any such order, shall read the same and make the same available for public inspection, but such board of education shall take no action thereon until the next following regular meeting thereof. Any nine qualified electors who reside in the attendance center of any such attendance facility may prior to such next meeting of such board of education appeal the order of the state fire marshal to the state board of education by serving a notice of appeal to the state board of education, the state fire marshal and a copy thereof to the affected board of education. Such affected board of education shall take no further action upon the matter until it receives the order of the state board of education either sustaining or overruling the order of the state fire marshal. All such appeals shall be promptly determined by the state board of education and its order thereon shall be conclusive."

Subsection (h) deals with proceedings which may be invoked after an order of the State Fire Marshal is sustained by the State Board of Education.

The act, K. S. A. 72-8213, because of the entitlement given by the trial court and the parties, may sometimes be referred to hereafter as chapter 280 or Senate bill No. 761.

On April 6, 1972, the State Fire Marshal notified the Board of 251 that the structure, known as the Elementary School of Americus, did not met the minimum standards of the safety requirements of occupancy as an attendance facility. The notice by letter, directed to the Superintendent of District No. 251, reads as follows:

"April 6, 1972

"Mr. Joe Hargrave, Supt.
"USD #251
"Admire, Kansas 66830

"Dear Mr. Hargrave:

"The requested structural engineer's report of March 11, 1972 indicates some degree of danger from structural deterioration.

"Under the provisions of K. S. A. 72-4605 and 72-4607 you are hereby notified that the structure known as the Elementary school at Americus, Kansas, does not meet the minimum standards of safety requirements for such occupancy.

"This office recommends that the use of this building as a school be discontinued and the building not be opened for classes for the 1972-73 school term.

"I further recommend that any plan to repair or renovate this building be dropped. If it were to be braced, trussed, and otherwise propped up it would still be an old building with inadequate and improper exists, antiquated electric wiring and unsatisfactory educational environment. I feel there is no economically feasible way to make this building fire safe.

"Please advise this office of the action taken by your Board. This will void the letter of March 13, 1972.

"Sincerely,
"/s/ Russell Collins
"Chief Deputy Fire Marshal
"(State of Kansas)"

After receipt of the foregoing notice, the Board of 251 held a special meeting on April 10, 1972. The State Fire Marshal's letter was considered and it was resolved that the original letter be filed in the district office of 251 and that a copy thereof be posted in all attendance centers of the unified district.

Thereafter, pursuant to the provisions of 72-8213, more than nine resident qualified electors in the attendance center in which the facility was located served timely notice of an appeal of the State Fire Marshal's order to the State Board of Education.

On May 2, 1972, the State Board held a hearing on the appeal and deferred determination thereof until June 7, 1972; when, after receiving an Attorney General's opinion in the matter, ruled in pertinent part:

". . . [T]he Fire Marshal has no authority to order a school to be closed; and, further, the Fire Marshal's recommendations isn't appealable to the State Board of Education; so, therefore, no action can be taken by the State Board on the appeal filed. . . ."

This action of the State Board was communicated to appellants' attorney and the Board of 251.

In the meantime, the Board of 251, in a regular meeting on June 5, 1972, ordered the attendance facility to be closed at the end of the 1971-72 school year, subject to any contrary action which might be taken by the State Board.

Thereafter, on June 28, 1972, appellants filed their petition initiating the present action.

Issues were joined by answers filed by the State Board and the Board of 251. At a pretrial conference on July 3, 1972, the issues were defined and the positions of parties were declared. Board 251 responded to appellants' request for admissions and a supplemental pretrial conference was held on August 2, 1972, at which time certain stipulations were entered into and the issues further delineated.

From the pleadings, pretrial conferences and stipulations of the parties, the issues presented to the court were narrowed to these questions:

1. Is K. S. A. 72-8213 unconstitutional and void?

2. Was the action of the State Fire Marshal an appealable order?

3. Was the State Board required to act on appeal?

4. Was the refusal by the State Board to act on the appeal to be construed as sustaining the action of the State Fire Marshal?

5. Should the Board of 251 have made a finding as to the expenses of repairs?

6. Does the Board of 251 have interest or implied power to close a school facility?

Briefs and suggested findings and conclusions were submitted for consideration by the trial court. On August 29, 1972, the trial court filed a comprehensive memorandum opinion resolving the issues raised. The trial court ruled that appellants' claim for injunction against the Board of 251 should be denied and rendered judgment to that effect. The trial court further concluded that appellants' claim against the State Board should be allowed and judgment was rendered directing the State Board to act on and determine the appeal from the order or recommendation of the State Fire Marshal set forth in his letter dated April 6, 1972.

The State Board did not challenge the trial court's ruling and in compliance therewith considered the appeal and, on September 5, sustained the order of the State Fire Marshal and notified all interested parties of its action by letter dated September 6, 1972. Therefore, there is no issue before us concerning the relief sought by appellants in the form of mandamus against the State Board.

The trial court further ruled that 72-8213 was not unconstitutional for any of the reasons asserted by appellants; that the Board of 251 was not required to make a finding of costs of repairs since no order recommending repair, remodeling or restoration was made in this case; and that the taking of no action by the State Board could not be construed as a sustaining of the State Fire Marshal's order since this required an affirmative or positive act on the part of the State Board. The trial court concluded that the Board of 251 had power to close the facility; reasoning that such implied power was incident to powers expressly conferred.

On September 7, 1972, appellants filed a motion to amend the trial court's judgment of August 29, and in the alternative asked for a new trial. In their motion to amend, appellants sought to inject new and additional issues into the case with reference to the State Board's decision on the appeal of the State Fire Marshal's order which had been announced on September 5, 1972.

With their motion, appellants filed affidavits of one of the appellants' stating that the building was not in danger of collapsing and was in no worse condition than many other buildings used for public purposes. One affidavit further stated that a petition for an election pursuant to subsection (*h*) of chapter 280 (72-8213) had been filed on September 12, 1972, with the county election officer. The trial court heard arguments on appellants' motions on September 22, 1972, and on October 16, 1972, filed its decision overruling the motions in toto. Thereafter this appeal was perfected.

The State Board, in its brief on appeal, joins with the Board of 251 in fully supporting all of the trial court's rulings.

In their statement of points on appeal appellants specify numerous errors; however, it appears the principal and controlling issues are—(1) Is K. S. A. 72-8213 unconstitutional and (2) does the Board of 251 have inherent or implied authority to close the attendance facility in question?

Appellants make a two-pronged attack on the constitutionality of 72-8213. They contend: first, that it fails to comply with Article 2, Section 16 of the Constitution of the State of Kansas in that the title of Senate bill No. 761, enacted as chapter 280, laws of 1972, and now codified as K. S. A. 72-8213, is defective and does not conform with the constitutional requirements and, second, that the provisions of the act are uncertain, vague, ambiguous, contradictory and inconsistent to the point that no interpretation can be given thereto.

Turning to the first proposition advanced by appellants, Article 2, Section 16 of the Constitution of the State of Kansas provides in pertinent part:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, . . ."

The title to chapter 280, laws of 1972, reads as follows:

"An Act concerning education; issuance of bonds by school districts in certain cases; amending K. S. A. 1971 Supp. 72-8213, as amended by 1972 House bill No. 2098, and section 3 of 1972 Senate bill No. 650, and repealing the existing sections."

Appellants argue that the first part of the title—"An Act concerning education; issuance of bonds by school districts in certain cases;"—is too broad and does not clearly express the subject of

the statute; and that the second part of the title referring to the statute amended is inadequate to indicate the subject.

Before considering specific arguments of appellants, it should be noted that under our many decisions it is elemental that provisions of the constitution are to be liberally construed to give to the law-making power all freedom not positively prohibited by the constitution, and an act under consideration is to be given liberal construction, with all doubts resolved in favor of its constitutionality for the purpose of carrying into effect the will of the legislature. (See *Westover v. Schaffer*, 205 Kan. 62, 468 P. 2d 251, and cases cited therein.) Concerning the application of the particular constitutional provision under consideration here, guiding principles to be followed have been frequently stated and are summarized in *Water District No. 1 v. Robb*, 182 Kan. 2, 318 P. 2d 387, wherein we held:

"Article 2, Section 16 of the Kansas Constitution is an imperative mandate to the legislature commanding it that no bill shall contain more than one subject which shall be clearly expressed in the title, but it is not necessary that the title be a synopsis or abstract of the entire act in all its details. It is sufficient if the title indicates clearly in general terms the scope of the act where the detailed provisions embraced therein are all germane to the subject expressed in the title. A title will be liberally construed when attacked as violating the foregoing constitutional provision." (Syl. ¶ 2.)

This court considered the problem in depth in the case of *City of Wichita v. Sedgwick County*, 110 Kan. 471, 204 Pac. 693, wherein the constitutionality of sections of an act pertaining to allocation of expenses in connection with suppression of smallpox or other contagious diseases was challenged on the ground that such provisions were not within the scope of the title "An act relating to cities of the first class." In support of its decision upholding the act, the court, by way of analogy, referred to the general act of 1876 relating to public education entitled "An act for the regulation and support of common schools." The act embodied the entire foundation of our public school system. The court had this to say about the scope of the title to that act:

". . . But though the title to this act gives no hint of these far-reaching details, yet because they are mere details of the general scheme of the act for the effective regulation and support of common schools, and are germane and pertinent to the principal purpose of the act, they are not subject to constitutional infirmity under section 16 of article 2." (p. 473.)

In the more recent case of *Colorado Interstate Gas Co. v. State Corporation Comm.*, 192 Kan. 30, 386 P 2d 288, the subject matter

of the Gas Conservation Act of 1959 was held to have been sufficiently expressed in the title of the act and it was said in the opinion:

"A title is sufficient if it indicates clearly, though in general terms, the scope of the act. The more general the language of the title, the broader the subject matter of the act may be. It is not necessary that the title be an index, a synopsis, or an abstract of the entire act in all its details. The purpose of the title is to inform the legislature and the general public of the subject under consideration." (p. 36.)

Education is the title of Article 6 of our constitution which specifically delegates responsibility for all aspects of the subject to the legislature. The title of the act in question declares that it is "AN ACT concerning education" and that it amends K. S. A. 1971 Supp. 72-8213, as amended. Certainly, the declaration that it concerns education is broad enough to cover any of the subject matter of the act; and by referring to K. S. A. 1971 Supp. 72-8213, it follows that the only way the title could be said to be fatally defective would be that if in turn K. S. A. 1971 Supp. 72-8213 were void by reason of the failure of the title to properly state the subject of the act, and likewise, with respect to the titles of the acts amended by the 1971 acts. We have heretofore related the legislative history of the act in question and have examined the titles to the acts which it now embraces. It will suffice to say that although different conditions have been prescribed the same subject, *i. e.*, closing of schools and matters related thereto are treated in chapter 280, laws of 1972 (72-8213) and its predecessors. Any new matter contained in chapter 280 is sufficiently covered by the statutory reference to the original act in the title. It is not necessary that the title of an act make reference to the specific details included in the statute. In the case of *Water District No. 1 v. Robb,* supra, we said:

Where the new matter in an amended act is germane to the subject of the original act and the title of the original act is sufficiently broad to cover everything embraced in the amended act, the requirements of Article 2, Section 16 of the Kansas Constitution are met." (p. 19.)

See, also, *Soden v. State Highway Commission,* 192 Kan. 241, 387 P. 2d 182; and *Brewer v. City of Pittsburg,* 91 Kan. 910, 139 Pac. 418.

We have carefully examined the cases cited by appellants and find them to be distinguishable in that the subject matter of the acts in question was either beyond the scope of the titles or dealt with matters clearly not germane to the title.

We conclude that the title to the act in question is sufficient to

indicate the scope of the act and that the subject matter therein is germane and pertinent to the principal purpose of the act.

For the second point of constitutional challenge, appellants claim the provisions of 72-8213 are uncertain, vague, ambiguous, contradictory and inconsistent to the point that no interpretation can be given thereto. At the outset, we pause to take note of guidelines established by decisions of this court within the framework of which the assertions of appellants must be considered.

In the recent case of *Unified School District No. 255 v. Unified School District No. 254*, 204 Kan. 282, 463 P. 2d 499, we held:

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its legality, and before it may be stricken down it must clearly appear the statute violates the constitution.

"Judicial examination of any law enacted by the legislature proceeds on the assumption that it is valid unless it contravenes an express inhibition of the constitution or one necessarily implied from some express affirmative provision of that instrument, and an act of the legislature is not to be stricken down on the ground it is unconstitutional unless infringement of the superior law is clear beyond substantial doubt.

"A statute will not be declared void for vagueness and uncertainty where it employs words commonly used, previously judicially defined, or have a settled meaning in law." (Syl. ¶¶ 1, 2 and 5).

We have also said that statutes will not be stricken down unless infringement of the constitution is clear beyond substantial doubt. (*Harris v. Shanahan*, 192 Kan. 183, 387 P. 2d 771), and further that if there is any reasonable way to construe a law as constitutionally valid, instead of invalid, it will be so construed. (*Hunt v. Eddy*, 150 Kan. 1, 90 P. 2d 747.)

With these principles in mind, we turn to the meaning and intent of subsection (g) of the act which is the main object of appellants' attack on this point. It appears neither the appellants nor the Board of 251 had difficulty in determining the proper course of action upon receipt of the State Fire Marshal's letter. The Board of 251, after receiving the notice, read the same at its first meeting, resolved that it be filed and made available for public inspection by posting a copy in all attendance centers of the Unified District, but took no action thereon until the next regular meeting, all as expressly directed by the statute. Likewise, appellants, in accordance with the statute, served notice of appeal by nine resident electors to the State Board. The State Board promptly considered the appeal. No difficulty was encountered until the State Board, after receiving advice from the Attorney

General, ruled the State Fire Marshal's order in these circumstances was not appealable. This point was settled by the trial court's judgment with which none of the parties took issue and therefore the matter is moot. Notwithstanding their prompt appeal, in accordance with the directions of the statute, appellants continue to urge on appeal that there is vagueness and uncertainty in the terms "order" and "recommendation" as they appear in subsection (g). We think the trial court adequately disposed of this contention when it observed:

". . . The state and its political subdivisions have many inspectors and agents in the enforcement of provisions relating to public safety, health, sanitation and the like. It is readily understood by inspectors and affected citizens alike that when some directive, communication or other command is issued by an inspector, that it is and can be properly referred to as an order— one positive to do something, or one recommending certain action. The name by which the directive is called is unimportant. They are frequently referred to as orders. Although not in the record, apparently it is the administrative practice of the State Fire Marshal to issue what are termed 'orders,' either for closing or recommending some other action. The operative construction of an administrative officer of body is not ignored by the courts and is given great weight. (*Southwestern Bell Telephone Co. v. Employment Security Board of Review*, 189 Kan. 600.)"

In the first sentence of subsection (g) reference is made to two alternative actions which might be taken by the State Fire Marshal (1) ordering or recommending that a school building be closed and (2) recommending repair and remodeling. These provisions make it clear that only orders relating to the closing or repair of a building are appealable under provisions of (g); that is building or structural type orders as distinguished from the many other orders which may be issued by the State Fire Marshal relating to the installation and maintenance of fire protection devices and equipment. (See Fire Protection Act, K. S. A. 1972 Supp. 31-132, *et seq.*)

It is evident the legislature intended to recognize the difference between closings relating to policy decisions in which event approval of the electors in the attendance center is required under subsection (a) of 72-8213, and those closings which relate to the condition of the building contemplated in subsection (g). With respect to the latter, protection against possible arbitrary action on the party of the State Fire Marshal or the local board of education is afforded by the provisions for the exercise of the supervisory powers of the State Board by way of appeal. In this connection the

trial court noted that the whole plan of the statute is one in which the State Board is the final arbiter and that the State Fire Marshal is merely used as a step in that plan. We take note that the State Board is created by the Kansas Constitution (Article 6, Section 2) and is given broad supervisory powers over public schools. The constitution further provides that the Board shall perform such other duties as may be provided by law. The duties of the State Board prescribed under the provisions of subsection (g) fall wholly within the ambit of constitutional authorization. The language of the subsection consists of words of common usage and a careful reading thereof makes clear the procedure to be followed and the rights of affected parties thereunder.

We find no constitutional deficiencies in the act in question on any of the grounds urged by appellants.

In the instant case the State Fire Marshal's order was a recommendation to close the building because there was no economically feasible way to make the building fire safe. The Board of 251 accepted the State Fire Marshal's order without objection or challenge and proceeded to act on it in accordance with the provisions of statute. Since there was no order recommending repairs the Board of 251 was not required to make any findings with regard to expenses. Apparently, the appellants had almost immediate notice of the State Fire Marshal's order, but no effort was made by them to submit evidence concerning the condition of the building at any stage of the proceedings. There was no issue joined in the trial court concerning the condition of the building. Appellants complain because the trial court accepted the State Fire Marshal's order as evidence of the condition of the building. The fact is there was no other evidence pertaining to the condition of the building before the trial court until after judgment when several affidavits were filed in support of a motion for a new trial. We find no error in the trial court's judgment in this regard.

Appellants vigorously contend that the Board of 251 had no implied or inherent power to close the attendance facility. They argue that even though there might have formerly been such implied power in a local board it was withdrawn by the enactment in 1963 of subsection 1 (a) proscribing closing of a facility without consent of the resident electors in the attendance center involved. Appellants take the position that the provisions of 1 (a) are special and exclusive and thus no implied power to close remains vested in the board in the absence of consent by the electors. Appellants cite

cases holding in effect that municipal corporations, such as school districts, have only such powers as are expressly conferred by statute and acquire none by implication. The rule stated by appellants has long been recognized by this court and we have no quarrel with it; however, as noted by the trial court, the adoption in 1966 of the amendment to Article 6 of the Kansas Constitution bestowed broad supervisory powers in the State Board of Education. Subsection 2 (a) of Article 6 of the Constitution reads in pertinent part as follows:

"The legislature shall provide for a state board of education which shall have general supervision of public schools, educational institutions and all the educational interest of the state, except educational functions delegated by law to the state board of regents. . . ."

We find this provision in Section 5 of Article 6:

"Local public schools under the general supervision of the state board of education shall be maintained, developed and operated by locally, elected boards. . . ."

Under the provisions of K. S. A. 72-1033a a school board is delegated control of and responsibility over all school district property. This authority is subject, of course, to statutory limitations and the overall supervisory authority of the State Board.

The trial court reasoned that the burden imposed upon a school board for the control over school buildings and responsibility for the same under the provisions of K. S. A. 72-1033, by necessity, carried with it the implied or inherent power to close a building in order to avoid endangering children. The trial court said:

". . . It is a responsible and just interpretation that where the facts warrant it, such as here, the school board can have a closing of the facility subject only to any contrary action which might be taken by the State Board of Education on appeal. . . ."

There appears to be a sound basis for the trial court's reasoning; however, we do not rest our decision on that premise alone. We believe express power to close an attendance facility, under the circumstances existing here, is declared in subsection (g) itself by this language:

". . . [S]uch board of education, under either of the foregoing circumstances, may close and discontinue the use of any such building, without complying with the requirements of subsection (a) of this section. . . ."

The foregoing circumstances referred to are those set out as (1) and (2) of the act; that is, where the State Fire Marshal orders or recommends the closing of the building under (1), as in this case, or

recommends repair and the board finds the cost thereof unwarranted or excessive under (2). Under either circumstance, nine qualified electors have the right of review by the State Board by way of appeal such as was done in this case. Subsection (g) proscribes further action by the local board until it receives the order of the State Board. In this case the Board of 251 made its closing order on June 5, 1972, before the State Board had acted on the appeal; however, the Board of 251 conditioned its order subject to any contrary action by the State Board. Thus, even though the closing order of June 5 was premature, the Board of 251 recognized this fact and made the order contingent on action by the State Board.

In view of what has been said the judgment of the trial court denying injunctive relief must be affirmed.

We feel obliged to mention two other matters which were raised by appellants in their posttrial motions to amend and for a new trial. The appellants sought to have another opportunity to present evidence which could have been presented at the time of trial. In this connection Paragraph 37 of the supplemental pretrial order entered on August 2, 1972, reads as follows:

"Plaintiffs indicate that no further evidence is intended to be offered, and defendants will indicate to the Court and adverse counsel not later than August 2, 1972, if they intend to offer any evidence. And if not, the matter will be deemed submitted as of its assignment date on August 3, 1972, without further appearance or order, and plaintiffs shall have until August 7, 1972, to file written brief; defendants are to have until August 22, 1972, for answer and plaintiffs to have two weeks thereafter in which to reply."

No indication of intention or desire to offer further evidence was given by appellants. In their motion to amend the judgment, appellants alleged that further proceedings had been instituted under the provisions of subsection (h) and sought to have the trial court amend its judgment to include rulings on matters in connection therewith. At the time the trial court entered judgment, no final action had been taken by the State Board on the appeal. It was the trial court's judgment that brought about action on the appeal by the State Board as sought by the appellants in their petition. At the time of the judgment there was no issue before the trial court pertaining to the provisions of subsection (h). The record discloses that every issue framed by the pleadings, delineated in the pretrial conferences or otherwise presented, was fully resolved by the trial court's comprehensive opinion filed herein.

The judgment is affirmed.